## JOHNSON v. FILSTOW, Inc.
### No. 630.

District Court, S. D. Florida,
Miami Division.

March 30, 1942.

R. M. Thomson, of Miami, Fla., for plaintiff.

Simonhoff & Simonhoff, of Miami, Fla., for defendant.

WALLER, District Judge.

The plaintiff, a janitor in an office building, sued the owner of the building for alleged unpaid minimum wages and overtime compensation under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The defendant has filed a motion to dismiss.

The complaint asserts that the defendant owns and operates the Calumet office building in the City of Miami, which houses persons, firms, and corporations engaged in interstate commerce, including a transportation company (Eastern Air Lines, Inc.,) and a telegraph company (Western Union Telegraph Company), and that the defendant failed to pay the plaintiff the minimum wage and overtime required by the Fair Labor Standards Act.

In the argument on the motion to dismiss it was conceded that the employer, who owned the office building, was not engaged in interstate commerce, but it was asserted by the plaintiff that this made no difference since, under the decision in the case of Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, the business engaged in by the employee and not the business engaged in by the employer was the controlling factor. With the decision in the Kirschbaum case I am in disagreement insofar as it holds that the employee can be engaged in interstate commerce even though his employer is not.

In Section 202, Title 29, U.S.C.A. is found the following significant language:

"The Congress hereby finds that the existence, *in industries engaged in commerce or in the production of goods for commerce,* of labor conditions detrimental to * * * efficiency, and general well-being of workers. * * *

"It is hereby declared to be the policy of sections 201–209 of this title * * * to correct and as rapidly as practicable to eliminate the conditions above referred to in *such industries* without substantially curtailing employment or earning power." (Emphasis added.)

In subsection (a), Section 205, Title 29 U.S.C.A. we find that the Administrator shall appoint an "industry committee for *each industry engaged in commerce or in the production of goods for commerce."* (Emphasis added.)

In subsection (e), Section 205, separate industry committees may be appointed "to recommend the minimum rate or rates of wages to be paid under section 206 to *employees therein* [meaning in such industries] engaged in commerce or in the production of goods for commerce in particular industries." (Emphasis added.)

In Section 208, subsection (a), the following pertinent language is found: "(a) With a view to carrying out the policy of sections 201–219 of this title by reaching, as rapidly as is economically feasible without substantially curtailing employment, the objective of a universal minimum wage of 40 cents an hour in *each industry* engaged in commerce or in the production of goods for commerce, the Administrator shall from time to time convene the industry committee for each such industry, and the industry committee shall from time to time recommend the minimum rate or rates of wages to be paid under section 206 by employers engaged in commerce or in the production of goods for commerce in such industry or classifications therein." (Emphasis added.)

The words "employer" and "employee" are used in a concomitant relationship throughout the Act. The relationship of employer and employee is inseparable. The conclusion is inevitable that if an employee is engaged in commerce it is presupposed that his employer must also be.

It, therefore, clearly appears from these excerpts that Congress has not disregarded the business in which the employer is engaged but in several instances it refers to the *industry engaged* in commerce or the production of goods for commerce, and shows very clearly that in the contemplation of Congress the employee could not be engaged in interstate commerce or the production of goods for commerce unless the employer were also engaged in commerce or in the production of goods for commerce.

It is quite apparent that Congress did not disregard the relation of master and servant, or employer and employee, in the passage of the Fair Labor Standards Act. It strikes this Court that the Kirschbaum case has failed to give due weight to the quoted provisions and other applicable phrases of the Act in question which clearly indicate the intent of Congress to regulate wages and hours of employees only where the employer is engaged in interstate commerce or in the production of goods for commerce.

Here the plaintiff is a janitor who sweeps the floor and is supposed to dust the furniture in an office building in which two of the tenants are engaged in interstate transportation of persons and messages, but the janitor works for the owner of the building, and the owner of the building is not engaged in the production of goods for commerce nor in interstate commerce. The janitor looks after the building and the building is not going anywhere nor producing anything. The dust the janitor removes does not travel interstate unless, perchance, some of it attaches itself to the clothing of a prospective traveler and abides with him until he reaches beyond the confines of Florida.

Neither Eastern Air Lines nor the Western Union Telegraph Company employs the janitor. Neither of these companies would have the right to hire or fire him even if it were so disposed. This janitor cleans offices of other tenants in the building who are not engaged in interstate commerce. It is no doubt true that the offices of the air lines and telegraph companies must be kept clean in order that these companies might better transact their business, but the cleaning of the offices and the furnishing of janitor services is an incident to the relation of landlord and tenant. It is an incident to, and a part of, the leasehold contract. It is an incident to the contract with the tenant who is not engaged in interstate commerce and no additional burdens are added to the landlord's obligation to keep the offices clean by reason of the fact that the tenant is engaged in interstate commerce.

The Fair Labor Standards Act does not apply to businesses that merely affect interstate commerce. Swift & Company v. Wilkerson, 5 Cir., 124 F.2d 176; Jax Beer Company v. R. J. Redfern, 5 Cir., 124 F.2d 172; Gerdert v. Certified Poultry & Egg Co., Inc., D.C., 38 F.Supp. 964.

If the plaintiff were an employee of the telegraph company or of the air lines company the situation would be different, unless employees of the air lines are exempt under subsection 4, Section 213(a) of the Act, but to find that a janitor employed in an office building to clean the offices of the tenants therein is engaged in interstate commerce would require the sifting of considerable sand to find a flea. If sweeping out dust brought in and left by interstate travelers is interstate commerce, it would appear that the dust left by such travelers would be so infinitesimal that the doctrine of de minimus would apply. And in view of the fact that air travelers are far above the dust and grime of earth, this Court reasons that they do not leave sufficient dust in the office to be swept out to put the janitor in interstate commerce. Besides, it would be an impossibility for him to segregate the time spent by him in sweeping out interstate dust as compared to intrastate dust. Furthermore, even if interstate travelers do leave dust in the office it has probably come to rest. At least it has reached "the end of its journey in interstate transportation".

If the plaintiff's contentions be sustained on the theory that sweeping the office is necessary to interstate commerce, it should not stop with the janitor. A janitor must wear clothes; it is necessary that he be clothed before he could enter the office and sweep it. Therefore, the merchant who sold him the clothes would be supplying an essential to interstate commerce. Or, if the janitor had on a shirt that was made by his wife for his use in sweeping, the wife would also be engaged in the production of goods for commerce. It is necesssary for the janitor to eat, and if by chance he bought a hamburger from a restaurant, the restaurateur would be furnishing an essential in interstate commerce. And so on, ad infinitum. Reductio ad absurdum!

The purposes and objects of the Fair Labor Standards Act are admirable, but the penalties of the Act are severe. This Court does not believe that Congress intended that the Act should be stretched and strained to cover every phase of human activity to a point of ridiculous absurdity, but rather that Congress intended merely to cover the employees of such employers as were engaged in interstate commerce, or in the production of goods for commerce, as those phrases are commonly understood. I know not what course others may take, but as for me I propose to give this Act a practical and sensible construction so long as there is no impelling authority to the contrary.

The servant is engaged in and about his master's business. If the master is not engaged in interstate commerce, neither is the servant.

The motion is granted and the cause is hereby dismissed.