## ADDISON v. COMMERCIAL NAT. BANK IN SHREVEPORT.

### No. 11995.

Circuit Court of Appeals, Fifth Circuit.

Jan. 30, 1948.

Rehearing Denied Feb. 26, 1948.

No appearance for appellant.

Charles D. Egan and Clarence L. Yancey, both of Shreveport, La., for appellee.

Before HUTCHESON, McCORD, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Plaintiff below, appellant here, was night janitor or clean-up man and elevator operator in a fifteen story office building in Shreveport, Louisiana, owned and operated and in part occupied by the defendant bank, his employer.

His claim in general was that, within the meaning and coverage of Secs. 3 and 6 of the Fair Labor Standards Act,[1] he was engaged "in the production of goods for commerce", that is, though he was not "employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on" goods for commerce, he was engaged "in any process or occupation *necessary* to the production thereof". Particularized, it was that he was so engaged (1) because the bank, which owned and in part operated the building, was engaged in it in producing goods for commerce, to-wit "executing or validating bonds, shares of stock, commercial papers, etc.", and (2) because some of the tenants of the building, though not producing goods therein for commerce, were carrying on their activities related, indeed necessary, to such production elsewhere.

The defense was that, reading the words of the statute with common sense, that is as words intended to mean what they said, no more and no less, and applying them to the undisputed facts according to the rules of right reason, it could not be said that plaintiff was "employed * * * in any process or occupation necessary to the production" of goods for commerce.

At the conclusion of the evidence,[2] which

---

[1] 29 U.S.C.A. § 201 et seq.

[2] So far as material, it was as follows:

Plaintiff's duties were those of a night janitor or clean-up man, and operator of an elevator, for which he received wages as alleged in the complaint. According to his own testimony, he came on duty at 6:30 P. M., and quit about 7:00 A. M., Mondays through Fridays; Saturdays from 6:00 P. M. to 7:00 A. M., and Sundays, 5:00 P. M. to 7.00 A. M. The elevator was operated until midnight, for the few persons who had occasion to go into the building after the usual office hours, from the time he took over in the evening, and after that time, that is, midnight, if anyone happened to be in the building and wished to leave he let them out. The building was closed to entrance from the outside at twelve, midnight.

After locking the front door at that hour, plaintiff went to the top of the building of some fifteen stories and proceeded downward "checking every door at each office, and going in and turning off the lights" when they were left

938

presented no serious dispute, the district judge, of the opinion that the case was ruled by our decision in Johnson v. Downtown Development Co, 5 Cir., 132 F.2d 287, 289,[3] rejected plaintiff's claim and found for defendant.

Here appellant, pressing vigorously upon us Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258, the natural result of the view implicit in Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638, that because "the body of Congressional enactments regulating commerce reveals a process of legislation which is strikingly empiric", the court's decisions should be as empiric, insists that the district judge was wrong. Appellee, pressing as vigorously 10 East 40th Street v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263, in which by "a shift in the votes of Douglas, Frankfurter, and Jackson, J. J.", the same court on the same day was enabled to sound the beginning of a retreat from the gloss upon, to the statute itself, insists that he was right.

Unskilled as we are in the intricacies and involvements of the higher judicial exegesis, its logomancies, its preciosities, its legal dialectics, as these two cases exhibit it, when by shifts in voting the majority has become the minority, the decisions of yesterday the mere dicta of today, to us the question of statutory construction and application this case presents seems a clear and simple one, its answer as simple and as clear.

If, therefore, we could ignore the confused and confusing decisional gloss put upon the statute by these two cases and Kirschbaum v. Walling, to the decision in which, as opposed to its dicta, both claim to adhere, and, applying the simple and meaningful words of the statute as written to the equally simple and meaningful facts the record presents, decide this case upon the principles of common sense and right reason, our yoke would be easy, our burden light.

But judges, as we are, of a court the Constitution calls "inferior", we may not turn thus lightly from the way of stare de-

burning. When he got to the bottom, he checked upon the stairways and cleaned them, and then went into the bank, checking the bank doors, back and front, to see if any had been left open, turned out lights found burning, and mopped the lobby of the bank and stairways to the mezzanine floor, as well as those into the basement. He also mopped the four elevators and swept the sidewalk around the building. Early in the morning, he opened up the doors to let the maids in to get the offices ready for the tenants. He then went back to the fifteenth floor and came down, turning on the hall lights on all floors and opening up the fire escapes, toilet doors of the building, etc. He had nothing to do in the bank itself except to let the maids in to do the cleaning.

The bank occupied the first floor and basement, mezzanine and most of the second floor. It also retained regularly the services of a private detective agency to guard the banking quarters. The building had several tenants, who, like the Gulf Refining Company, were engaged in the oil business in more than one state, but did not carry on any of their manufacturing operations therein, although they kept offices for executives, accounting clerical help, etc. therein. The Gulf also operated a telegraph sys-

tem, receiving and sending messages to its plants and offices in other states.

[3] There, setting out the statute and the undisputed facts, and canvassing the authorities, including Arsenal Building Corp. and Kirschbaum Co. v. Walling, (2 cases), 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, we rejected a similar claim made by porters and janitors of an office building, saying:

" * * * we do not think that Congress intended that the Act with respect to those who were only 'engaged in commerce' should be stretched and strained to cover every person whose labor is of use or convenience or whose labor in some fashion contributes to the comfort or convenience of one who is so engaged. * * * Clearly, Congress intended the coverage of the Act to stop somewhere, and the line bounding coverage must be drawn somewhere.

" * * * ' "What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation." Gully v. First National Bank, 299 U.S. 109', 117, 57 S.Ct. 96, 100, 81 L.Ed. 70.

"Applying the common sense rule, we hold that Appellants are not within the coverage of the Act."

cisis. We must, though blown about by every wind of changing dichotomy, find, if we can, and, if we can, follow the path the Supreme Court has taken, though the way be dark and tortuous, its destination uncertain and obscure. Only when our difficulties arise not from the fact that the trail, the decisions leave, is not merely faint and difficult but really impossible to find, may we as of right, indeed of duty, turn from the tangled words of the decisions to return to the simple words of the statute to find in them the way that we should go.

For however much we may think it plain that a wrong decision should be downrightly overruled, "inferior" as we are, we have no function to advise our betters, as the great and wise of old have done, that stare decisis "is not a universal, inexorable command",[4] that its "rigid dogma of infallibility allows of this much relaxation in favor of truth unwittingly forsaken".[5]

For the same reason that we are without power to correct the error of the wrong turning by which the way was lost, it will serve no useful purpose for us to descant here upon the why and where of it. Whether, as we think is the case, it came in Kirschbaum v. Walling, where the essential nexus[6] between employer and employee established by the act was completely overlooked or deliberately disregarded; whether, as Stone, C. J., dissenting, thought,[7] it came in the Borden case where the recognition of the nexus joining em-

---

[4] "If the court is of opinion that this act of Congress is in necessary conflict with its recent decisions, those cases should be frankly overruled. The reasons for doing so are persuasive. Our experience in attempting to apply the rule, and helpful discussion by friends of the Court, have made it clear that the rule declared is legally unsound * * *."

"The doctrine of stare decisis should not deter us from overruling that case and those which follow it. The decisions are recent ones. * * * Stare decisis is ordinarily a wise rule of action. But it is not a universal, inexorable command. The instances in which the court has disregarded its admonition are many. * * * *". Brandeis, J., dissenting, State of Washington v. W. C. Dawson & Co., 264 U.S., at pages 236 & 238, 44 S.Ct. 302, at page 309, 68 L.Ed. 646.

[5] Bleckley, C. J.:
"Some courts live by correcting the errors of others and adhering to their own. * * * With these exalted tribunals, who live only to judge the judges, the rule of stare decisis is not only a cannon of the public good, but a law of self-preservation. * * * *"

"Minor errors, even if quite obvious, or important errors, if their existence be fairly doubtful, may be adhered to, and repeated indefinitely; but the only treatment for a great and glaring error affecting the current administration of justice in all courts of original jurisdiction is to correct it. When an error of this magnitude, and which moves in so wide an orbit, competes with truth in the struggle for existence, the maxim for a supreme court,—supreme in the majesty of duty as well as in the majesty of power,—is not stare decisis, but fiat justitia ruat coelum." Ellison v. Georgia Railroad and Banking Co., 87 Ga. 691, 13 S.E. 809, 810.

[6] Waller, D. J.:
"In the argument on the motion to dismiss it was conceded that the employer, who owned the office building, was not engaged in interstate commerce, but it was asserted by the plaintiff that this made no difference since, under the decision in the case of Fleming v. A. B. Kirschbaum Co., 3 Cir., 124 F.2d 567, the business engaged in by the employee and not the business engaged in by the employer was the controlling factor. With the decision in the Kirschbaum case I am in disagreement insofar as it holds that the employee can be engaged in interstate commerce even though his employer is not.
* * * * * * *
"The words 'employer' and 'employee' are used in a concomitant relationship throughout the Act. The relationship of employer and employee is inseparable. The conclusion is inevitable that if an employee is engaged in commerce it is presupposed that his employer must also be.
* * * * * * *
"The servant is engaged in and about his master's business. If the master is not engaged in interstate commerce, neither is the servant." Johnson v. Filstow, Inc., D.C., 43 F.Supp. 930, 931.

[7] "[Congress] did not, by a 'house-that-Jack-built' chain of causation bring within the sweep of the statute the ultimate causa causarum which result in the production of goods for commerce. Instead it defined production as a physical process. It said in § 3(j) ' "Produced" means produced, manufactured, mined, handled, or in any other manner worked on' and declared that those who

ployer and employee, turned the scale; or whether, as the four dissenters thought, it came in the Callus case; it is sufficient for us to say that we cannot reconcile these decisions, nor can we in their mazes find and follow the true path of the law.

Completely discarding the gloss they have put upon it, we return then to the statute to find in its clear and simple language the way that we should go. So turning, we are not in any doubt that the district judge was right in holding that appellant was not an employee engaged "in a process or occupation necessary to the production" of goods for commerce and, therefore, was not within the statute's coverage.

The judgment is affirmed.

McCORD, Circuit Judge.
I concur in the result.

LEE, Circuit Judge, concurs in the result.

participate in any of these processes 'or in any process or occupation necessary to' them are engaged in production and subject to the Act." Borden v. Borella, 325 U.S. at page 685, 65 S.Ct. at page 1226, 89 L.Ed. 1865, 161 A.L.R. 1258.