HENRY SPAETH, RESPONDENT, v. THE WASHINGTON UNIVERSITY, A CORPORATION, APPELLANT.—213 S. W. (2) 276.

St. Louis Court of Appeals. Opinion filed July 2, 1948.

Appellant's motion for rehearing or modification of opinion, or for transfer to Supreme Court of Missouri overruled September 3, 1948.

Opinion of Court filed July 2, 1948, modified by the Court of its own initiative September 3, 1948.

*Richard S. Bull* for appellant.

*Thomas F. Manion* and *Irvin H. Gamble* for respondent.

WOLFE, C.—This is an action brought under the Fair Labor Standards Act of 1938 for overtime wages alleged to be due the plaintiff by reason of his hours of employment as a watchman in and about the buildings and premises known as Cupples Station Property owned by the defendant. A jury having been waived the trial court, after hearing the cause, found in favor of the defendant and thereafter granted plaintiff a new trial. It is from the order granting a new trial that the defendant prosecutes this appeal.

There are no issues of fact presented since the parties filed an agreed statement at the trial as to most of the factual matters and the evidence that was presented appears without contradiction.

Defendant owned and maintained the property known as Cupples Station Property in the downtown area of the City of St. Louis, Missouri. This property consisted of several large buildings and railroad trackage facilities with loading platforms. The buildings were leased to various business concerns that were engaged respectively in jobbing and warehousing of paper and wooden products, wholesaling and warehousing of hardware, wholesaling and warehousing of groceries, and processing and sale of furs and general warehousing. Some of the tenants engaged in the processing or production of goods and these activities will be more fully detailed in consideration of the question raised by this appeal. The plaintiff was a watchman employed by the defendant and his duties were to patrol the property and watch over the buildings and the railroad cars, used in interstate commerce, and over trackage facilities. He guarded and protected the area against fire and theft. At times, in case of rain, he was obliged to move trucks loaded with freight into a sheltered area. It is admitted that if the Fair Labor Standards Act is applicable to the work that plaintiff was doing there is due him as wages $878.30.

The Fair Labor Standards Act of 1938, 52 U. S. Statutes 1060, 29 U. S. C. A., Secs. 201-219, states as its Finding and Declaration of Policy in Section 2(a):

"The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several

States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce."

It is provided in Section 3(j) that for the purpose of the Act an employee shall be deemed to have been engaged in the production of goods if engaged in "any process or occupation necessary to the production thereof,". The Act proceeds to set out a minimum wage scale and in Section 7(a) provides the maximum hours of work, with a further provision for the payment of one and one-half times the hourly scale for time worked in excess of the hours specified.

The only question raised here is whether the plaintiff comes under the benefits of this Act or is not covered by it. The first case reaching the United States Supreme Court which required a consideration of the scope of the Act was the case of Kirschbaum Co. v. Walling, 316 U. S. 517. In that case the workmen affected were maintenance employees, elevator operators and watchmen employed by the owner of a loft building in Philadelphia and a twenty-two story building located in a New York City manufacturing district. Practically all of the tenants in the building were engaged in the production of goods for interstate commerce. The court stated:

"The petitioners assert, however, that the building industry of which they are part is purely local in nature and that the Act does not apply where the employer is not himself engaged in an industry partaking of interstate commerce. But the provisions of the Act expressly make its application dependent upon the character of the employees' activities. And, in any event, to the extent that his employees are 'engaged in commerce or in the production of goods for commerce,' the employer is himself so engaged. Nor can we find in the Act, as do the petitioners, any requirement that employees must themselves participate in the physical process of the making of the goods before they can be regarded as engaged in their production. Such a construction erases the final clause of Section 3(j) which includes employees engaged 'in any process or occupation necessary to the production' and thereby does not limit the scope of the statute to the preceding clause which deals with employees 'in any other manner working on such goods.'"

About three years after this decision was handed down the court decided the case of Borden Co. v. Borella et al., 325 U. S. 679, which had to do with the same class of employees in a twenty-four story office building in New York City. The Borden Company, which owned the building, used seventeen of the floors for its own offices and rented the balance to tenants who were not engaged in the production of goods for commerce. The court held that while no goods were actually

processed in the building the Act should be given effect as production was directed from the building.

These two cases were followed by a third United States Supreme Court case, 10 East 40th Street Building, Inc., v. Callus, 325 U. S. 578. This involved the same class of employees working in a typical office building and in describing the use of the building the court said: "Indisputably, the building is devoted exclusively to offices, and no manufacturing is carried on within it." In determining that the employees did not come under the Act it was stated:

"Renting office space in a building exclusively set aside for an unrestricted variety of office work spontaneously satisfies the common understanding of what is local business and makes the employees of such a building engaged in local business. Mere separation of an occupation from the physical process of production does not preclude application of the Fair Labor Standards Act. But remoteness of a particular occupation from the physical process is a relevant factor in drawing the line. Running an office building as an entirely independent enterprise is too many steps removed from the physical process of the production of goods. Such remoteness is insulated from the Fair Labor Standards Act by those considerations pertinent to the federal system which led Congress not to sweep predominantly local situations within the confines of the Act."

In attempts to follow these cases some confusion has arisen as evidenced by the opinion in the case of Addison v. Commercial National Bank in Shreveport, 165 F. 2d 937, wherein the Circuit Court of Appeals, Fifth District, stated: "* * * we cannot reconcile these decisions, nor can we in their mazes find and follow the true path of the law." It is true that no definite rule is laid down by these decisions for the determination of what employees are under the Act but the language used recognizes that the complexities of industrial situations must let the question rest upon the facts in each case.

In the case under consideration practically all of the tenants are engaged in commerce and in the production of goods for commerce although there is not a great amount of rented area used in the physical production of goods. Shapleigh Hardware Company, which occupies a larger area than any other tenant, repairs guns, shapes ax handles and prints its own stationery and some advertising matter in addition to jobbing in interstate commerce merchandise which is stored in and passes through the buildings. The General Grocer Company, selling a line of merchandise in fifteen or sixteen states, roasts, grinds and packages its own brand of coffee upon the premises, and the Associated Grocers, selling in Illinois and Missouri, labels some canned goods. The fur companies who are tenants in the place scrape and dry furs which are sold in interstate commerce.

Appellant contends that its property and the use of it is such as to bring this case under the holdings in 10 East 40th Street Building, Inc., v. Callus, above cited. But the building involved in that case was a typical office building and the same is true in the following cases, which are cited: Addison v. Commercial Nat'l Bank in Shreveport, 165 F. 2d 937; Johnson v. Dallas Downtown Development Co., 132 F. 2d 287; Johnson v. Masonic Building Co., 138 F. 2d 817. The property here under consideration cannot be so classified. It is true that a great part of some buildings is taken up by clerical workers but that does not alter the close similarity between this property and that considered in the Kirschbaum case, above cited.

It is stated that less than two per cent of the entire area watched by plaintiff is used in actual physical production of goods. In arriving at this figure the area covered by the railroad facilities is included and appellant overlooks the area used to label canned goods, which process comes within the Act. Baldwin et al. v. Emigrant Industrial Savings Bank, 150 F. 2d 524; Western Union Telegraph Co. v. Lenroot, 323 U. S. 490. No rule based upon a percentage of the area used seems logical for it is conceivable that a concern might use a great amount of space for warehousing, sale and advertising of products that required but a small amount of area for manufacture. The property is industrial property designed and being used by concerns producing for interstate commerce and with its trackage facilities and warehousing space it is difficult to see that it could be as effectively used for any other purpose.

The watchman, guarding goods, checking the doors of freight cars to see that they are closed and protecting against fire and theft, was engaged in an occupation necessary for the production of goods as provided by Section 3(j) of the Act. It was so held in the Kirschbaum case, and this court has so held in Edwards v. South Side Auto Parts, Mo. App., 180 S. W. 2d 1015, and Niehaus v. Joseph Greenspon's Sons Pipe Corp., 237 M. App. 112, 164 S. W. 2d 180.

Appellant further contends there should be a distinction between a watchman employed by one engaged directly in interstate commerce activities under the Act and a watchman employed by one who rents premises to others so engaged. This contention does not conform with the quoted portion of the Kirschbaum case, nor with Overstreet v. North Shore Corp., 318 U. S. 125, where the court stated:

"The nature of the employer's business is not determinative, because as we have repeatedly said, the application of the Act depends upon the character of the employees' activities."

The Act provides under Section 16(b) that the employer shall be liable to the employee not only for the amount of unpaid wages but further provides for "an additional equal amount as liquidated damages" and attorney's fees. Where the evidence disclosed that compensation was owing it was formerly mandatory under the above

provision to award liquidated damages. Rigopoulos et al. v. Kervan, 140 F. 2d 506; Seneca Coal & Coke Co. v. Lofton, 136 F. 2d 359; Niehaus v. Joseph Greenspon's Sons Corp., above cited. However, the act was amended by Section 11 of the "Portal-to-Portal Act of 1947" (29 U. S. C. A., Sec. 260; 61 Stat. 89) providing that "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938" the award of damages was left to the discretion of the court.

The evidence here leaves no doubt that the employer acted in good faith and with the existing conflicts of opinion as to the application of the Act had reasonable grounds for believing that it did not come under it. It therefore appears that nothing more than the wages owing and a reasonable attorney's fee should be allowed. The wages owing amount to $878.30 and as to the attorney's fees the evidence indicates that one-third of the amount recovered would be reasonable and that is the sum of $292.77.

The court should therefore have entered a judgment for the plaintiff in the sum of $1171.07, and since all material facts in this case have been presented and the law in relation to them ruled upon there is no reason for a retrial. Atlantic Nat'l Bank v. St. Louis Union Trust Co., Mo. Sup., 211 S. W. 2d 2. The only further proceeding necessary is the entry of a proper judgment.

The Commissioner recommends that, inasmuch as the trial court erroneously entered a judgment for the defendant and it is the duty of this court under the circumstances here presented to give such judgment as the trial court should have given, Section 140(c) Civil Code, Mo. R. S. A., Sec. 847.140(c), the cause be remanded with directions to the circuit court to set aside the order granting a new trial and the judgment prior thereto entered and to enter a new judgment for the plaintiff in the sum of $1171.07.

PER CURIAM:—The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The cause is accordingly remanded with directions to the circuit court as recommended by the Commissioner. *McCullen, P. J.,* and *Anderson* and *Hughes, JJ.,* concur.