**BORELLA et al. v. BORDEN CO.**

District Court, S. D. New York.

Dec. 7, 1943.

Newgass & Nayfack and Ralph H. Wiener, all of New York City (George W. Newgass, Nathan Cooper, and Leo H. Hirsch, Jr., all of New York City, of counsel), for plaintiffs.

Milbank, Tweed & Hope, Henry K. Greer, and John A. Kelly, all of New York City (John A. Kelly, of New York City, and George F. Keenan, of New York City, of counsel), for defendant.

CONGER, District Judge.

The plaintiffs bring this action, which was tried before the court without a jury, on their own behalf and on behalf of other employees of the defendant similarly situated. The action against the defendant is brought to recover overtime compensation and an equal amount as liquidated damages plus a reasonable attorney's fee pursuant to section 16 (b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216 (b).

Jurisdiction is conferred upon this court by virtue of Section 24 (8) of the Judicial Code, 28 U.S.C.A. § 41 (8).

There are no facts in dispute.

The defendant is a foreign corporation, organized under the laws of New Jersey, licensed to do business in this state and doing business in this district. It is the owner of a building located at 350 Madison Avenue, New York City, of which it occupies, in whole or in part, approximately seventeen of the twenty-four floors of the building in connection with the operation of its business. The head office of the defendant is located in this building, and the defendant occupies approximately 58% of the total rentable area of the building.

The plaintiffs are employed in connection with the operation and maintenance of the building as porters, watchmen, elevator operators, etc.

Plaintiffs contend that defendant is engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act. It bases this contention on two grounds. First: That defendant is engaged in the physical production of goods on the premises.

With respect to this claim, there are only two facts that merit attention. One is that ideas and rough drafts for labels, which are to be affixed to the products of the defendant and for advertising material for use throughout the country and abroad, emanate from this building.

The other is that the photostatic plant maintained by the defendant in the building is engaged in the production of goods and 5 per cent of its output is shipped across state lines.

I can't convince myself that either of these activities constitute "production of goods" as defined by the act.

These activities, however, may and should be considered in connection with the real question presented here, and that is whether the nature of the business carried on by the defendant at 350 Madison Avenue is such that plaintiffs may be said to be engaged in the production of goods for commerce within the meaning of the Fair Labor Standards Act. Defendant concedes that it is engaged in interstate commerce, but it denies that it is engaged in the production of goods at 350 Madison Avenue in New York City.

Defendant's business consists mainly in the sale and distribution of fluid, condensed and evaporated milk, casein, ice cream, butter, cheese and the products manufactured from milk. These products are processed, prepared or manufactured at factories and plants located throughout the United States and distributed from the plants and factories.

The actual production of goods for commerce is carried on in buildings separated entirely from 350 Madison Avenue.

The business of defendant is national and international.

At 350 Madison Avenue are the offices of the executives of the defendant, together with other employees (clerical), and the maintenance employees. It is the home office of the defendant and here are the various departments which direct and supervise the entire business of defendant.

In this building is the accounting department, with its various divisions; the sales division, the credit department, the traffic division, the legal department, the safety division; the Board of Directors hold their regular and special meetings here.

Notwithstanding all this, no goods, wares, products, commodities, merchandise or articles or subjects of commerce of any character or any part or ingredient thereof " * * * are produced, manufactured, handled or in any other manner worked on", in this office building.

I can only conclude that defendant at 350 Madison Avenue is not engaged in the production of goods for commerce but is engaged in interstate commerce.

We now must pass on to the status of these plaintiffs. The question now presents itself: Are they engaged in interstate commerce? On this question, the nature of plaintiffs' activities is controlling and not the business of the employer.

■ There are two classes of employees contemplated by the act; those engaged in the production of goods for commerce and those engaged in commerce.

■ The act itself makes a difference between the two. As to the second, the act limits it to those actually engaged in commerce, but as to the first class there is no limitation. It covers, not only those who participate in the physical process of the making of the goods, but also those employees engaged in any process or occupation necessary to the production.

It was as to the status of this second class of employees, that the Supreme Court passed on in A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. Plaintiffs may not invoke that decision in support of their claim. They are in the other class, i. e., those engaged in commerce.

I am satisfied that this case comes within the reasoning, Stoike v. First National Bank of the City of New York, 290 N.Y. 195, 48 N.E.2d 482, 485.

This question is passed on fairly and squarely and all of the recent Supreme Court decisions on this point are discussed and analyzed. Among other things, the Court of Appeals said, "We think that in framing section 7 (subd. a) of the Act Congresss intended definitely to distinguish between the scope of those categories of employees which it described as being 'engaged in commerce' and those engaged 'in the production of goods for commerce.' The phrase 'in commerce' was not intended to include within its scope that wide field of activities which remotely affect interstate commerce. Whenever Congress, acting under the commerce clause, has wanted to embrace that broader field it has definitely expressed that purpose."

See, also, Johnson v. Dallas Downtown Development Co., 5 Cir., 132 F.2d 287; Hinkler v. Eighty-three Maiden Lane Corp., D.C., 50 F.Supp. 263; Callus v. 10 East Fortieth Street Bldg., D.C., 51 F.Supp. 528; McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1251.

■ The Supreme Court in this last case laid down this rule: "The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase, 'production of goods for commerce.'"

■ In the light of the provisions of the act and the authorities construing the act, I can only conclude that the work of these plaintiffs is not so closely allied to the activities carried on in the building at 350 Madison Avenue that these employees may be said to be engaged in interstate commerce.

I find that the plaintiffs are not within the coverage of the act.

Judgment for the defendant on the merits with costs.