BORDEN COMPANY *v.* BORELLA ET AL.

No. 688.   Argued April 6, 1945.—Decided June 11, 1945.

*Mr. John A. Kelly,* with whom *Messrs. George F. Keenan* and *Henry Kirk Greer* were on the brief, for petitioner.

*Mr. A. H. Frisch,* with whom *Messrs. George W. Newgass* and *Bertram S. Nayfack* were on the brief, for respondents.

*Miss Bessie Margolin,* with whom *Solicitor General Fahy, Messrs. Chester T. Lane* and *Douglas B. Maggs* were

on the brief, for the Administrator of the Wage and Hour Division, United States Department of Labor, as *amicus curiae,* urging affirmance.

MR. JUSTICE MURPHY delivered the opinion of the Court.

Once again, as in *Kirschbaum Co.* v. *Walling,* 316 U. S. 517, we are required to consider the application of the Fair Labor Standards Act of 1938 [1] to employees engaged in activities relating to the maintenance and operation of a building.

In the *Kirschbaum* case we held that the Act does apply to such employees working in a loft building in which large quantities of goods for interstate commerce are physically produced. In the instant case, the porters, elevator operators and night watchmen in question work in a 24-story office building in the business district of New York City. The building is owned and operated by the petitioner, the Borden Company, which is a New Jersey corporation engaged in the business of manufacturing milk products and other food products. Petitioner occupies approximately 17 of the 24 floors and 58% of the total rentable area. The remainder of the office space is leased to various tenants, none of which was found by the District Court to produce, manufacture, handle, process or in any other manner work on any goods in the building. [2]

Petitioner has manufacturing plants and factories in both the United States and Canada and its products are sold in large volumes throughout this and other countries. These establishments are admittedly engaged in the production of goods for interstate commerce. The heart of

---

[1] 52 Stat. 1060, 29 U. S. C. § 201 *et seq.*

[2] The leasing of space to these tenants is incidental to the use of the building by the Borden Company and we need not consider whether the activities of the tenants are such as to constitute production of goods for commerce.

this industrial empire, however, lies in the central office building in New York City. Here the entire enterprise is supervised, managed and controlled.

In this building the directors meet and the corporate officers conceive and direct the policies of the company. Although geographically divorced from the manufacturing plants, employees working in this building dictate, control and coordinate every step of the manufacturing processes in the individual factories. By means of direct teletype wires, they maintain detailed and meticulous supervision of the plants, the local superintendents exercising discretion only in the conduct of routine matters. While no products are actually processed or sold in the building, the purchase of raw materials and supplies, the methods of production, the amounts to be produced, the quantity and character of the labor, the safety measures, the budgeting and financing, the legal matters, the labor policies and the maintenance of the plants and equipment are all directed from this building. Such are the activities of petitioner's central office which is maintained, serviced and guarded by the respondent employees.

The respondents brought this suit against petitioner to recover overtime compensation and liquidated damages, plus reasonable counsel fees. The District Court denied relief, holding that they were not entitled to the benefits of the Act under the rule of the *Kirschbaum* case.[3] 52 F. Supp. 952. The Second Circuit Court of Appeals reversed the judgment. 145 F. 2d 63. We took the case because

[3] The District Court also ruled that the preparation and drafting of labels, photostat and advertising material in petitioner's central office did not constitute "production of goods" within the meaning of the Act and that the case in this respect was controlled by *McLeod* v. *Threlkeld*, 319 U. S. 491, and *Stoike* v. *First National Bank*, 290 N. Y. 195, 48 N. E. 2d 482. The Circuit Court of Appeals, however, found it unnecessary to pass upon this phase of the case. We likewise have no occasion to express our views on this matter since the determination of the main issue is sufficient to dispose of this case.

of the asserted conflict with the decision of the Tenth Circuit Court of Appeals in *Rucker* v. *First National Bank,* 138 F. 2d 699, and because of the importance of the issue as to the application of the *Kirschbaum* doctrine to such facts as are here presented.

Under § 7 (a) of the Act, overtime compensation must be paid to all employees "engaged in commerce or in the production of goods for commerce." As to the latter category of employees it is unnecessary that they directly participate in the actual process of producing goods inasmuch as § 3 (j) provides that "for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed . . . in any process or occupation necessary to the production thereof, in any State." Our problem thus is to determine whether the respondent maintenance employees are engaged in a process or occupation necessary to the production of goods for commerce so as to come within the ambit of § 7 (a).

The *Kirschbaum* case made it clear that the work of maintenance employees in a building where goods were physically manufactured or processed had "such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce.' " 316 U. S. at 525–526. The maintenance of a safe, habitable building, with adequate light, heat and power, was deemed necessary to the production of goods for commerce. See also *Walton* v. *Southern Package Corp.,* 320 U. S. 540; *Armour & Co.* v. *Wantock,* 323 U. S. 126. The only distinction between this and the *Kirschbaum* case lies in the fact that here the employees work in a building where production of goods is administered, managed and controlled rather than carried on physically. We hold, however, that this distinction is without eco-

nomic or statutory significance and that it cannot form the basis for concluding that the respondent employees are engaged in occupations unnecessary to the production of goods for commerce.

In an economic sense, production includes all activity directed to increasing the number of scarce economic goods. It is not simply the manual, physical labor involved in changing the form or utility of a tangible article. Such labor is but an integral part of the coordinated productive pattern of modern industrial organizations. Equally a part of that pattern are the administration, management and control of the various physical processes together with the accompanying accounting and clerical activities. Economic production, in other words, requires planning and control as well as manual labor.[4] He who conceives or directs a productive activity is as essential to that activity as the one who physically performs it. From a productive standpoint, therefore, petitioner's executive officers and administrative employees working in the central office building are actually engaged in the production of goods for commerce just as much as are those who process and work on the tangible products in the various manufacturing plants. And since the respondent maintenance employees stand in the same relation to this production as did the maintenance workers in the *Kirschbaum* case, it follows that they are engaged in occupations "necessary" to such production, thereby qualifying for the benefits of the Fair Labor Standards Act.

---

[4] In the words of the court below, "As was observed over a century ago, every process of manufacture (indeed for that matter every process by which men can affect the outside world at all) may be resolved into the movement of things in space, and it would be absurd to say that, although what the artisans do in the factory, or the dispatching clerks do upon the shipping platforms, is 'necessary' to 'production,' the directions they receive that govern all the movements they impart, are not 'necessary.' " 145 F. 2d at 65.

We find nothing in the Act militating against this conclusion. Sections 7 (a) and 3 (j) both speak of production without attempting to limit its meaning to physical labor. Section 3 (j) in particular defines the term "produced" not only in the physical sense of manufacturing, mining and handling but also in the more general sense of producing or "in any other manner" working on goods. In the absence of any contrary evidence we are unable to assume that Congress used the term in other than its ordinary and comprehensive economic sense. Indeed, the fact that § 13 (a) (1) specifically excludes from the provisions of §§ 6 and 7 those employees employed in a bona fide executive, administrative or professional capacity is clearly consistent with the conclusion that these activities are included within the concept of production as that term is used in the Act and that full effect should be given that fact unless otherwise provided. Thus where, as here, the work of employees is essential or necessary to such executive, administrative or professional activities of a productive nature the employees fall within the purview of § 7 (a) even though those directly engaged in such activities are by express exemption precluded from sharing in its benefits.

Nor do we find in the interpretative principles laid down in the *Kirschbaum* case any basis for holding that the respondent employees are not "necessary" to petitioner's production. Since they bear the same relation to production as did the maintenance employees in that case they cannot be considered any less essential to production; nor can this conclusion have any different "implications in the relation between state and national authority." 316 U. S. at 525. Petitioner's industrial organization is such that the operation and maintenance of a central office building is essential to the economy, efficiency and continuity of production. In short, this office is "part of an integrated effort for the production of goods," *Armour & Co.* v.

*Wantock, supra,* 130, and the statutory consequences that flow from that fact cannot be avoided.

The judgment below is

*Affirmed.*

MR. JUSTICE FRANKFURTER concurs in the result.

MR. CHIEF JUSTICE STONE, dissenting.

No doubt there are philosophers who would argue, what is implicit in the decision now rendered, that in a complex modern society there is such interdependence of its members that the activities of most of them are necessary to the activities of most others.  But I think that Congress did not make that philosophy the basis of the coverage of the Fair Labor Standards Act.  It did not, by a "house-that-Jack-built" chain of causation, bring within the sweep of the statute the ultimate *causa causarum* which result in the production of goods for commerce.  Instead it defined production as a physical process.  It said in § 3 (j) " 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on" and declared that those who participate in any of these processes "or in any process or occupation necessary to" them are engaged in production and subject to the Act.

In *Kirschbaum Co.* v. *Walling,* 316 U. S. 517, after pointing out that Congress did not undertake to make the Act applicable to all occupations which affect commerce, we held that the services of elevator men and other service employees in a manufacturing loft building, where those services contributed to and assisted the manufacturing process carried on there, were within the Act.  But nothing then decided or said seems to me to justify our saying that the elevator men and other maintenance employees in an office building, in which no manufacturing is done, either participate in or are necessary to the manufacturing process, because tenants of its building are ex-

ecutive or administrative officers of a company which does manufacturing elsewhere.

The fact that it is convenient or even necessary for the president of the company to ride in an elevator does not seem to me to meet the requirement of the statute that the occupation must be one necessary to the physical process of production. The statute includes those who are necessary to that process, but it does not also include those who are necessary to them. The manufacturing process could proceed without many activities which are necessary or convenient to the executive officers of a manufacturing company but which do not in any direct or immediate manner contribute to the manufacturing process, as did the services rendered in *Kirschbaum Co.* v. *Walling, supra.*

The services rendered in this case would seem to be no more related, and no more necessary to the processes of production than the services of the cook who prepares the meals of the president of the company or the chauffeur who drives him to his office. Compare *McLeod* v. *Threlkeld,* 319 U. S. 491. All are too remote from the physical process of production to be said to be, in any practical sense, a part of or necessary to it.

I would reverse the judgment.

MR. JUSTICE ROBERTS joins in this opinion.