## HUNTER et al. v. MADISON AVENUE CORPORATION.

### No. 10720.

United States Court of Appeals
Sixth Circuit.

April 22, 1949.

Anthony A. Aspero, of Memphis, Tenn. (Anthony A. Aspero, of Memphis, Tenn., on the brief), for appellants.

Alfred B. Pittman, of Memphis, Tenn. (Gilliland, Pittman & Morgan, of Memphis, Tenn., on the brief), for appellee.

Before SIMONS, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

Maintenance employees of an office building filed their complaint against appellee corporation seeking recovery of alleged unpaid minimum wages and overtime compensation, as well as liquidated damages and attorney's fees and costs, under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. At the conclusion of complainants' proofs, the district court dismissed the case, and complainants appealed.

Madison Avenue Corporation, the appellee, is the owner and operator of the Sterick Building, a twenty-nine story office building, in Memphis, Tennessee, which is exclusively devoted to the use of a miscellaneous variety of offices, and is occupied by more than three hundred tenants. Appellants, in their complaint, alleged that the tenants of the Sterick Building were engaged in interstate commerce and in the production of goods for commerce. They further set forth that appellee owner of the building was itself engaged in interstate commerce by reason of the fact that it collected waste paper from the various offices in the building in its daily cleaning operations; that such waste paper was eventually sold in interstate commerce; and that appellant employees were engaged in the collecting, gathering, and baling of such waste paper, and were, accordingly, subject to the provisions of the Fair Labor Standards Act.

The district court, in its findings of fact and conclusions of law, held that the building in question was operated as an independent enterprise, with space leased to numerous business concerns for an unrestricted variety of office work; that approximately 3% of the tenants, with 3½% of the rentable space, were engaged to some extent in handling and working on goods and materials which could be classed as producing goods for commerce; that the leasing of office space in an office building which is used for carrying on all ordinary business activities is local business, and that maintenance employees of such a building, serving the tenants as such, were not engaged in occupations necessary to the production of goods in commerce within the meaning of the Fair Labor Standards Act, and were not within the coverage of the Act. In addition, the court found that the waste paper, gathered from the building, was, as the evidence disclosed, sold to a local dealer who, in turn, disposed of it to a number of local concerns; that the latter thereafter processed the paper into roofing insulation and loaded it into box cars, for shipment outside Memphis, and that an undetermined portion of such material probably went outside the state. The court held that, assuming the appellant employees actually did perform duties in the gathering of the waste paper from the offices and did assist in baling it for dealers, nevertheless, they could not be said to be engaged in an occupation necessary to the production of goods for interstate commerce.

The occupations of the tenants and the nature of their work are set forth in elaborate detail in the briefs. Appellants showed that tenants occupying 84.8% of the average rented area of the building produced goods for commerce consisting of the following: mimeographed or multigraphed matter; drawings, plans, designs, specifications, bids, and contracts by architects and engineers; contracts by home offices of life insurance companies and by branch or agency offices of fire, casualty, and surety insurance companies; and publishers' materials, reports, orders, and tax returns. Other tenants produced materials on papers and also caused production of goods elsewhere; and others were engaged in handling, storing, working on, and repairing goods, wares, commodities, and merchandise other than on paper, in conducting a serum laboratory, a branch office for an X-ray corporation, watch repairing, and a hearing

aid company. Appellee also summarizes the number of tenants and their activities in more general classifications of the nature of the business carried on, as follows: fifteen state offices of national concerns which are used to sell a variety of the products of the companies they represent, with the result that substantial amounts of merchandise were shipped across state lines as a result of their sales efforts and considerable interstate correspondence was carried on; thirty insurance offices which, in representing their companies throughout the United States, receive applications for policies, forward them to the home offices, collect premiums, carry on correspondence with their policyholders and home offices, and perform all the functions necessary to such a business; eleven branch or district offices of national concerns which are used for executive or administrative activities of the various companies, taking orders for merchandise shipped across state lines, and carrying on the usual activities of district offices of a national concern; architects engaged in preparing plans and specifications, and sending them, in some cases, to other states; offices of trade associations engaged in furnishing various types of information as to commodity prices, freight rates, and similar data to members of their organizations; advertising concerns; executive and administrative offices of engineering and construction firms; insurance claim adjusters; executive offices of finance and credit organizations carrying on correspondence in connection with businesses and projects in various states; retail credit inspectors; offices of labor unions, of a manufacturing company, a telephone company, a telegraph office, an accountant, and of tenants engaged in several miscellaneous activities.

Concerns engaged in many of the foregoing, and similar, occupations have, in a number of cases, been held to be engaged in the production of goods for commerce within the meaning of the statute, and employees of the companies so engaged have been held to be covered by the provisions of the Fair Labor Standards Act. Moreover, service employees in buildings in which tenants were so engaged in the production of goods for commerce have, in

certain cases, likewise been held covered by the provisions of the statute.

In Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638, it was held that building service employees in loft buildings in which practically all of the tenants were engaged in the manufacture or purchase and sale of garments were engaged in an "occupation necessary to the production" of goods in interstate commerce within the meaning of the Fair Labor Standards Act and were covered by its provisions. In Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258, a company which was engaged in producing goods for interstate commerce, owned and operated a twenty-four story office building. The company itself occupied seventeen of the twenty-four floors, and 58% of the total rental area of the building, where its production of goods for interstate commerce was administered, managed, and controlled, although the goods were actually produced at plants located elsewhere. Maintenance employees of such building, it was held, were engaged in an "occupation necessary to the production" of goods for interstate commerce and were held to be covered by the provisions of the Act.

■ We are, however, of the opinion that, in the instant case, it is unnecessary to determine what percentage of the tenants was engaged in the production of goods for interstate commerce or in an occupation necessary to the production of such goods. In 10 East 40th Street Bldg. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 1229, 89 L.Ed. 1806, 161 A.L.R. 1263, where a corporation was the owner and operator of a forty-eight story New York office building, and the building employees brought suit under the Fair Labor Standards Act, it appeared that 42% of the rentable area and 48% of the rented area was occupied by offices of concerns engaged in the production of goods for interstate commerce. After distinguishing the Kirschbaum and Borden cases, the court observed that renting office space in a building exclusively set aside for an unrestricted variety of office work "spontaneously satisfies the common understanding of what is local business and makes the em-

ployees of such a building engaged in local business." Further, the court remarked that mere separation of an occupation from the physical process of production does not preclude application of the Fair Labor Standards Act; but that remoteness of a particular occupation from the physical process is a relevant factor in drawing the line. In its opinion, the court said: "Running an office building as an entirely independent enterprise is too many steps removed from the physical process of the production of goods. * * * The differences between employees of a building owned by occupants producing therein goods for commerce, and the employees of a building intended for tenants who produce such goods therein, and the employees of the office building of a large interstate producer, are too thin for the practicalities of adjudication. But an office building exclusively devoted to the purpose of housing all the usual miscellany of offices has many differences in the practical affairs of life from a manufacturing building, or the office building of a manufacturer. And the differences are too important in the setting of the Fair Labor Standards Act not to be recognized by the courts." The holding of the court that the business maintenance employees of the building in question were not covered by the Act controls our decision in this case.

With respect to the contention that appellee itself was engaged in the production of goods for commerce by reason of the fact that it caused the waste paper, gathered from the offices of the building in cleaning operations, to be sold to a waste paper dealer, that some of it was thereafter processed into roofing felt, and, of this, a certain amount eventually found its way into interstate commerce, we agree with the view of the district court that such part of the roofing material as may have gone into commerce was too many steps removed from the process of handling by the building employees, to come within the confines of the Act. Where some inconsequential incident of interstate commerce happens to result from the general conduct of a fundamentally intrastate business, the rule of de minimis is applicable and the Act does not apply. Hill v. Jones, D. C., 59 F.Supp. 569.

Counsel for claimants submitted, on appeal, an able and comprehensive brief on the many complicated questions arising out of the application of the Fair Labor Standards Act, and, on the trial, maintained the interests of their clients with vigor and tenacity. But appellants were poor people, and on the filing of a petition with the district court for permission to prosecute their suit in forma pauperis, an order was entered by the court allowing them to do so. However, some months later, after the complaint and the answer had been filed, the district court, sua sponte, entered an order reciting that numerous subpoenas had been issued and were continuing to issue; that the court deemed it advisable that the government be secured in its costs; and that a sufficient bond be made by the counsel of record for complainants. Counsel for complainants was thereupon ordered to execute security for costs in the amount of $500. After excepting to the order, counsel for complainants executed his personal bond as surety for such costs. The order of the district court was, under the authority of Adkins v. E. I. Du Pont De Nemours & Co., 335 U.S. 331, 69 S.Ct. 85, improvidently issued, and is, accordingly, set aside, the bond canceled, the surety discharged, and any fees paid the government by the surety as a consequence of the order of the district court are hereby ordered refunded.

With respect to other contentions of appellants, we find no reversible error.

The judgment of the district court is affirmed.