**CASA BALDRICH, Inc.**

v.

**MITCHELL, Secretary of Labor.**

**No. 4765.**

United States Court of Appeals First Circuit.

Argued Feb. 2, 1954.

Decided July 2, 1954.

Orlando J. Antonsanti, San Juan, Puerto Rico (Rene Benitez, San Juan, Puerto Rico, with him on the brief), for appellant.

Kenneth P. Montgomery, Regional Atty., Dept. of Labor, Santurce, Puerto Rico (Stuart Rothman, Sol., Bessie Margolin, Chief of Appellate Litigation, and David F. Babson, Jr., Atty., Dept. of Labor, Washington, D. C., with him on the brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

MAGRUDER, Chief Judge.

This is an appeal from a decree adjudging appellant company guilty of civil contempt for violating the terms of a 1948 injunction which had been issued under the provisions of the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. Among other terms, this injunction ordered:

"1—The defendant shall not contrary to Section 6 of the Act, pay any of its employees who are engaged in the production of goods for commerce, as defined by the Act, from the time of this Judgment, at wages less than the rates authorized by Section 6 of the Act or by an applicable order of the Administrator issued under Sections 6 and 8(c) of the Act. The provisions of this paragraph shall not prevent defendant from paying any of its employees wages authorized as to such employees by a special certificate issued and in effect under Section 14 of the Act."

The Administrator of the Wage and Hour Division of the Department of Labor commenced the instant proceeding on July 30, 1952, by applying to the district court for an adjudication in contempt. He took this action when it appeared that, subsequent to December 10, 1951 (the effective date of a wage order promulgated for the printing and similar industries in Puerto Rico), the respondent, by paying wages below the required minimum, had failed to comply with the terms of the 1948 court decree.

Casa Baldrich, Inc., the respondent-appellant, in answer to a show cause order issued by the district court, admitted that it had been paying certain of its employees a wage less than that specified by the wage order of December 10, 1951. It contended, however, that this did not constitute contempt of the court's decree because since the amendment of the Fair Labor Standards Act in 1949, " * * * Defendant's employees have ceased to be engaged in the production of goods for commerce and since such date your Defendant is an exempt establishment under the Fair Labor Standards Act, Section 13(a) (2) in that more than 75 per cent of its dollar volume sales of goods is not for resale and such sales are recognized as retail sales and services in the printing and supply business."

It is apparent that the respondent's failure to comply with the wage order did not violate the 1948 injunction if, as a result of an amendment to the Fair Labor Standards Act, the respondent's employees were in fact no longer "engaged in the production of goods for commerce". This is so because the decree by its terms is limited to employees so occupied. It is less apparent to us that Casa Baldrich is exculpated from contempt by demonstrating that it has since become exempt as a retail establishment under the amended statute. However, the case was tried below on the theory, apparently acquiesced in by the government, that if the defendant's employees were otherwise covered by the Act, it was pertinent to the question of contempt to determine whether Casa Baldrich was entitled to an exemption under § 13 of the amended statute. Since the government and the respondent are both satisfied that this issue is properly before us, we shall proceed on that basis.

The district court held that the 1949 changes in the Fair Labor Standards Act did not place the employees outside that statute nor grant an exemption to the respondent. The court therefore adjudged Casa Baldrich to be in contempt, and required it to purge itself of said contempt "by making restitution to each of its employees of an amount equal to the difference between what respondent actually paid to its respective employees during the period since December 10, 1951 and the amount re-

spondent should have paid to each of said employees had it not disobeyed the judgment of this Court."

The initial question we face on appeal is whether appellant's employees are engaged in the production of goods for commerce as that term is presently defined. The relevant provision of the statute is § 3(j). Prior to the amendment, that section read, 52 Stat. 1061:

" 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

The section now reads, 63 Stat. 911:

" 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

We hold, upon the facts and reasoning shortly to be detailed, first, that the Casa Baldrich employees involved in this litigation devoted, during the period in question, some portion of their time to the actual production of goods for commerce; and for this reason they remain, after the amendment to § 3(j), as before, subject to the Act. Second, a portion of these employees' time was spent in work closely related and direct-ly essential to the production of goods for commerce; and for this independent reason they remain within the coverage of the statute.

The following facts give rise to these two conclusions: Casa Baldrich is one of Puerto Rico's largest printing companies. It has two printing shops, one in Hato Rey and another in downtown San Juan. Attached to the main establishment in San Juan is a stationery store which is separated from the printing plant and serviced by employees who are not involved in this appeal.

As a regular part of its business, appellant does special order or job printing for numerous industrial and business concerns located in Puerto Rico. Among its regular clients Casa Baldrich numbers most of the large sugar centrals on the Island, its banks, needlework manufacturers, and an airline company. There is no question that these concerns engage in foreign and interstate commerce or in the production of goods for such commerce. Casa Baldrich manufactures for these companies such things as letterheads and envelopes, accounting and business forms (including payrolls, production and shipping records), check books for the banks, and baggage tags for the airline.[1]

This portion of the appellant's business apparently amounted to $44,247.-78 during the period in question (December 10, 1951, through August 31, 1952). Appellant's total dollar volume of sales during this same period was $264,563.62. While it appears that much of this latter figure is accounted for by relatively small sales to outfits of a local nature, Casa Baldrich used its employees indiscriminately on all of its printing orders, without attempting to segregate the work performed for the companies engaged in commerce or the production of goods for commerce from that performed for its small local customers. Thus some unsegregated portion of the appellant's employees' time

1. Casa Baldrich also sells printed matter directly but sporadically and in small quantities to customers in the Virgin Islands.

was regularly consumed in manufacturing goods for these large companies. It follows that these employees were covered by the Act if the goods they manufactured for said companies moved directly in interstate commerce, or were closely related and directly essential to the production of goods for such commerce. Cf. Mabee v. White Plains Pub. Co., 1946, 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607.

The district court found as a fact that "Employees of respondent have been, since December 10, 1951, producing goods which were directly transported in interstate commerce". This finding seems unassailable, for certainly the baggage tags manufactured for the airline company were destined for interstate use, as were some of the letterheads, envelopes and checks produced for other large Puerto Rican firms. On similar facts coverage has been found. Tobin v. Celery City Printing Co., 5 Cir., 1952, 197 F.2d 228.

Undoubtedly most of the material printed by Casa Baldrich for the large industrial and business concerns did not move in interstate commerce. Thus it is probable that the payrolls or other business and accounting forms never left Puerto Rico. If these forms were used by employees engaged in the *actual* production of goods for commerce, however, the Casa Baldrich employees while manufacturing these forms would seem to have been engaged in an occupation closely related and directly essential to such production. On the other hand, if these business forms served workers who themselves were engaged in a process only closely related and directly essential to the production of goods for commerce, then perhaps the Casa Baldrich employees while making these forms were engaged in an occupation too far removed from the immediate production of goods for commerce to be covered by the amended federal statute.

This is suggested by the legislative history of the 1949 amendments to the Fair Labor Standards Act.

The Report of the House Conferees states that the amendment to § 3(j) is "not intended to remove from the act maintenance, custodial, and clerical employees of manufacturers, mining companies, and other producers of goods for commerce. Employees engaged in such maintenance, custodial, and clerical work will remain subject to the act, notwithstanding they are employed by an independent employer performing such work on behalf of the manufacturer, mining company, or other producer for commerce. All such employees perform activities that are closely related and directly essential to the production of goods for commerce." House Managers' Report, 81st Cong., 1st Sess., 95 Cong.Rec. 14928–14929 (1949).

We would assume that the printing of payrolls, accounting and business forms for firms engaged in the production of goods for commerce is as "directly essential" to that production as is custodial or maintenance work. In determining coverage, therefore, the crucial question appears to be whether the printing of these forms is "closely related" to the production of goods for commerce.

The House Report informs us that the amendment to § 3(j) overrules the case of McComb v. Super–A Fertilizer Works, Inc., 1948, 165 F.2d 824, decided by this circuit. There "a local fertilizer company engaged in selling all of its fertilizer to local farmers within the State for use on land on which sugarcane is grown, which cane is then sold to sugar mills within the State and processed into raw sugar which is sent out of the State * * *." H.Rep., supra at 14929. The sugar mill is engaged in the production of goods for commerce, while the farmer is in a directly essential and closely related activity. We suppose that the fertilizer company must be deemed to be engaged in a business "directly essential" to the production of goods for commerce; and we must infer that the Congress deemed the employees of the fertilizer company not to be covered by the

amended Act because of the view that the fertilizer business was not to be considered "closely related" to such production. It is not closely related because it ministers to the requirements of workers who are not themselves in the actual production of goods for commerce.

In the instant case the question then comes down to whether the employees of the sugar centrals and other businesses which use the forms manufactured by Casa Baldrich are engaged in the actual production of goods for commerce. In determining this, it would seem that we may turn to the cases decided prior to the 1949 amendment, for, as a comparison of the original and amended Act indicates, the " * * * change in language does not * * * exclude from the coverage of the act * * * any employees actually employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on goods for such commerce. All such employees are entitled to the benefits of the act." Majority Report of Senate Conferees, 81st Cong., 1st Sess., 95 Cong.Rec. 14874 (1949); accord, House Managers' Report, id. at 14929.

In Borden Co. v. Borella, 1945, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, a case arising under the original Act, the Supreme Court held that maintenance employees working in an office building where no physical manufacturing was done were "necessary" to the production of goods for commerce. The office building housed the administrative branch of the Borden Co., a corporation engaged in the production of food products for interstate commerce. Borden products were physically manufactured in various factories located in the United States and Canada. In arriving at its decision, the Court reasoned that "From a productive standpoint * * * petitioner's executive officers and administrative employees working in a central office building are *actually* engaged in the production of goods for commerce just as much as are those who process and work on the tangible products in the various manufacturing plants." Italics added. 1945, 325 U.S. 679, 683, 65 S.Ct. 1223, 1225.

The employees of the sugar centrals, banks, and needlework industries, working with the printed forms manufactured by Casa Baldrich, seem to fit into the same category as the administrative and executive employees of the Borden case; hence the employees of Casa Baldrich now in question, since they service workers in the actual production of goods for commerce, appear to be in an occupation not only "directly essential" but also "closely related" to such production.

We come then to the question of whether Casa Baldrich was entitled to a retail exemption under § 13 of the amended Act.

Sections 13(a) (2) and 13(a) (4) are the provisions respondent relies upon. They read, 63 Stat. 917:

"Sec. 13. (a) The provisions of sections 6 and 7 shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; or * * * (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: *Provided,* That more than 85 per centum of such establishment's annual dollar volume of sales of goods

so made or processed is made within the State in which the establishment is located * * *."

The House Managers' Report advises that the 13(a) (2) exemption "* * * does not apply to any manufacturing activities since any such activities, when conducted by a retail establishment, if exempt, are intended to be exempt under section 13(a) (4) * * *." 95 Cong. Rec. 14932 (1949).

In the instant case, therefore, we are concerned specifically with this latter subsection, since the only employees involved in this appeal are those who work in the printing establishments in Hato Rey and San Juan.[2]

The House Managers' Report spells out six requirements which Casa Baldrich had the burden of proving in the trial below in order to justify its claim to an exemption:

"1. Over 50 percent of its annual dollar volume of sales of goods must be made within the State in which the establishment is located.

"2. Seventy-five percent of its annual dollar value of sales of goods must not be for resale.

"3. *Seventy-five percent of its annual dollar volume of sales of goods must be recognized as retail sales in its industry.*

"4. *The establishment must be recognized as a retail establishment in the industry.*

"5. More than 85 percent of the establishment's annual dollar volume of sales of goods which it makes or processes must be made within the State in which the establishment is located.

"6. The goods which the exempt establishment makes or processes must be made or processed at the establishment which sells the goods." (Italics added.) 95 Cong. Rec. 14932 (1949).

2. The court below held that defendant's employees who work in the stationery store come within the § 13(a) (1) exemption. That section provides an ex-

The district court in its findings of fact stated that the respondent had failed to show that 75 per cent of its annual dollar volume of sales of goods were recognized as retail sales in the industry; and the court found as a fact that the respondent's establishments were not recognized as retail establishments in the industry.

 The testimony in the record is far from convincing one way or another with respect to these two factual questions; therefore we do not have a situation wherein the trial court should be reversed as clearly erroneous.

The decree of the District Court is affirmed.

emption for "any employee employed in a bona fide * * * local retailing capacity * * *."