Raymond J. DONOVAN, Secretary of Labor, U.S. Department of Labor, Plaintiff,

v.

MICRO–CHART COMPANY and Gary Maxton, Defendants.

No. C–3–81–389.

United States District Court, S.D. Ohio, W.D.

Sept. 4, 1986.

Sandra B. Kramer, Office of the Solicitor, Cleveland, Ohio, for plaintiff.

Ronald L. Fobes, Dayton, Ohio, for defendants.

OPINION; FINDINGS OF FACT AND CONCLUSIONS OF LAW; LIABILITY FOUND ON PART OF DEFENDANTS; TELEPHONE CONFERENCE CALL SET

RICE, District Judge.

The instant case was tried to the Court concerning the issue of coverage of the activities of the employees of Defendant

Micro-Chart under the Fair Labor Standards Act. Having heard the evidence of the parties at trial, and having carefully considered the briefs submitted by the parties, the Court hereby enters the following Findings of Fact and Conclusions of Law.

## I.  FINDINGS OF FACT

The Court hereby enters the following Findings of Fact:

1.  Defendant Micro-Chart is an Ohio corporation having its principal place of business at 116 North Main Street, New Carlisle, Ohio.

2.  Defendant Micro-Chart is engaged in the business of microfilming records.

3.  Defendant Gary Maxton is President of Micro-Chart and is responsible for the day-to-day employment practices of the firm.

4.  During 1980, employees of Defendants microfilmed records for Reid Memorial Hospital in Richmond, Indiana on a monthly basis. Defendants' employees also microfilmed records for Reid Memorial Hospital on a regular basis during 1979 and 1981. (Testimony of Frances Barga, Tr. 31–32).[1]

5.  During 1980, Defendants' employees worked on records for Reid Memorial Hospital during each work week, on a continuous basis. (Testimony of Loretta Jenkins, Tr. 49–50).

6.  At least four employees are required to microfilm a given set of records from the time the unfilmed records arrive at Defendants' place of business until the completed microfilm leaves the establishment. The four employees prepare the records for filming, film the records, process the film and package the film. *Id.*

7.  Hobart Brothers Company manufactures equipment that is sold throughout the United States.

8.  From 1979 through 1981, Defendants' employees microfilmed records such as quality control records and production records, on a quarterly basis, for Hobart Brothers.

9.  B.F. Goodrich manufactures goods that are sold throughout the United States.

10.  Defendants' employees regularly microfilmed manufacturing records for B.F. Goodrich from 1979 through 1981.

11.  From 1979 to 1981, Defendants paid many of their employees less than the prevailing minimum hourly wage. New employees routinely received less than the minimum wage for the first six weeks of their employment with Defendants.

## II.  CONCLUSIONS OF LAW

The Court adopts the following Conclusions of Law:

1.  Defendants' employees are engaged in the "production" of "goods" for interstate commerce within the meaning of 29 U.S.C. Sections 203(i), 203(j), 206 and 207.

2.  Defendants' employees are regularly and customarily engaged in work that is closely related and directly essential to the production of goods for interstate commerce.

3.  Defendants' employees engaged in the production of goods for interstate commerce and in work closely related and directly essential to the production of goods for interstate commerce on a regular and recurring basis.

4.  Defendants' employees are covered by the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. Section 201, *et seq.* (the "Act").

5.  Defendants have violated the provisions of Section 6 of the Act, 29 U.S.C. Section 206.

6.  Defendants have violated the provisions of Section 7 of the Act, 29 U.S.C. Section 207.

7.  Defendants are not exempt as a retailer or service establishment under Section 13(a) of the Act, 29 U.S.C. Section 213(a).

---

**1.** Page references are made to the hearing transcript of the trial in this matter (Doc. # 21).

■ 8. While the fact that *some* work done by Defendants' employees is covered under the Act does not mean that *all* work done by Defendants' employees is covered under the Act, Defendants did not segregate, during the period in question, covered from non-covered work as between particular work weeks for any given employee or group of employees.

9. Defendants are liable for back wages as a result of their violations of Sections 6 and 7 of the Act, 29 U.S.C. Sections 206 and 207.

## III. DISCUSSION

Plaintiff filed a Complaint against Defendants with respect to future violations of the Fair Labor Standards Act and continued withholding of back wages alleged to be due. 29 U.S.C. Section 201, *et seq.* (Doc. # 1) Defendants' position is that Micro-Chart was not covered by the Act during the period in question. Although Defendant Micro-Chart came into compliance with the Fair Labor Standards Act in July, 1980 (Testimony of Gary Maxton, Tr. 80), Plaintiff's evidence focuses on January 1, 1979 through July 27, 1981. Accordingly, this is the period which the Court will consider for purposes of Plaintiff's burden of demonstrating Defendants' failure to comply with the Act.

Plaintiff sets forth two theories of coverage of Micro-Chart employees under the Act. This Court finds merit in both theories of coverage, based on the considerations and constraints set forth herein. Defendants contend that Micro-Chart is exempt from coverage under the Act under 29 U.S.C. Section 213(a)(2). The Court finds that Defendants have failed to carry their burden of showing their entitlement to this exemption. Although this opinion is strictly confined to the issue of coverage under the Act, the Court sets out certain observations which it believes will prove helpful in the parties' attention to the issue of damages subsequent to the instant finding of liability.

## A. PRODUCTION OF GOODS FOR INTERSTATE COMMERCE

As this is a case strictly concerned with coverage under the Act, the Court briefly reviews the language of the applicable statutes. Both 29 U.S.C. Section 206 and 29 U.S.C. Section 207 (hereinafter Sections 206 and 207) require payment of minimum wages and overtime premium compensation to any employee "who in any work week is engaged in commerce or in the production of goods for commerce." Plaintiff urges that Micro-Chart employees during the period in question were engaged in the production of goods for commerce.

Certain key statutory definitions are also provided by the Act. In 29 U.S.C. Section 203(i), "goods" is defined as including "goods ... wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof." The term "produced" as used in the Act is defined in 29 U.S.C. Section 203(j). The Court quotes this somewhat lengthier definition in full, given its relevance throughout this opinion:

> "Produced" means produced, manufactured, mined, handled, or in any other manner worked on in any state; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State.

■ This Court deals briefly with the definition of "goods" in Section 203(i). Defendant Maxton testified that Micro-Chart is primarily a microfilm service company. Defendant Micro-Chart picks up records from its customers, microfilms those records, and then delivers either the microfilm and/or the records back to the customer. (Testimony of Gary Maxton, Tr. 56). This Court has no doubt that this finished microfilm fits the broad definition of "goods" contained in Section 203(i). In *Shultz v. Holland,* 61 CCH Labor Cases

¶ 32,252 (N.D.Tex.1969), exposed film was found to fall within the statutory definition of "goods" when it was shipped from points outside of Texas into the state for the purposes of developing, shipping, and delivery of processed film and prints. Not only is the microfilm in the instant case analogous to the film in *Holland,* but the broad definition of "goods" indicates that the processed microfilm in this case falls within the statutory definition.

Turning to Section 203(j)'s definition of "produced," the question is whether any of Defendants' employees can be said to have "produced" goods within the meaning of the Act. In *Western Union v. Lenroot,* 323 U.S. 490, 503, 65 S.Ct. 335, 341, 89 L.Ed. 414 (1945), the Supreme Court noted that, as set forth in Section 203(j) itself, "produced" means "handled" or "worked on." The Court further observed that "[w]e are clear that "handled" or "worked on" includes every kind of incidental operation preparatory to putting goods into the stream of commerce." *Id.* The *Western Union* Court further held that Western Union did not "handle" or "work on" telegraph messages merely because it transmitted those messages.

■ The Court finds that Plaintiff has proved that Defendants' employees "produced" goods within the meaning of Section 203(j). Loretta Jenkins, Defendants' former supervisor, testified that a box of records from a customer would come into Defendant Micro-Chart to be microfilmed, and that that microfilming task would require the work of four different individuals. One individual would prepare the work for filming, one person would do the filming, one individual would process the film, and one employee would package it. (Testimony of Loretta Jenkins, Tr. 49). *See also* 29 U.S.C. Section 215(a)(1), (b). As will be discussed *infra,* Defendants then sent their finished microfilm into the stream of commerce. The Court finds that the activities of Defendants' employees fall within the definition of "produced" in Section 203(j).

The question remaining, then, is whether any of Defendants' activities, as established by Defendants' answers to interrogatories (Plaintiff's Exh. 1) and the testimony of the witnesses at trial allow the conclusion that Defendants' employees were engaged in the production of goods for interstate commerce from January, 1978 through July 27, 1981. In *Mabee v. White Plains Publishing Company,* 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607 (1946), the newspaper at issue regularly sold some one-half to one percent of its circulation out of state. In determining whether the employees of the newspaper had produced goods for interstate commerce, the Supreme Court noted 29 U.S.C. Section 215(a)(1), which makes unlawful the shipment of *any* goods in the production of which *any* employee was employed in violation of the minimum wage and overtime requirements. The Court gleaned from Section 215(a)(1) that sporadic or occasional shipments of insubstantial amounts of goods were not intended to be included within Section 215's prohibition. *Id.* at 181, 66 S.Ct. at 512. On the other hand, the Supreme Court concluded that, regardless of the size of shipments, *regular* shipments of goods in commerce were covered within the scope of the Act. *Id.* at 181–182, 66 S.Ct. at 512–513.

■ The Court finds that, under *Mabee,* the activities of Defendants' employees undertaken on behalf of Reid Memorial Hospital in Richmond, Indiana require the conclusion that Defendants' employees were engaged in the production of goods for interstate commerce during the period in question. There is no doubt that the finished microfilm of Reid Memorial Hospital records traveled in interstate commerce, as either Defendants' truck driver or Defendant Maxton himself would drive the finished goods to Indiana. The point is not, as Defendants have asserted, whether or not the truck driver transporting the filmed records received minimum wages in accordance with the Act. The crucial point is also not whether Defendants' work for Reid Memorial Hospital constituted a substantial percentage of Reid Memorial Hospital's business. Rather, the key point under *Ma-*

*bee* is whether Defendants' shipments to Reid Memorial Hospital were regular and recurring, regardless of the size or volume of those shipments.

The Court finds Plaintiff to have carried his burden of showing that Defendants' employees' activities on behalf of Reid Memorial Hospital during the period in question were regular and recurring. Frances Barga, from Reid Memorial Hospital, testified as to the regular and recurring business done between Reid Memorial Hospital and Defendant Micro-Chart from 1979 through 1981. (Tr. 31–32). Loretta Jenkins testified that in 1980, at least one employee at Defendant Micro-Chart was continuously working on the records of Reid Memorial Hospital. (Tr. 49–50). Janice Luttrell, a former employee of Defendant Micro-Chart, testified that she spent one entire month in late 1979 filming records for Reid Memorial Hospital. (Tr. 54–55).

The Court concludes that all of Defendants' employees were covered by the Act during the work weeks in which they filmed or otherwise worked on hospital records for Reid Memorial Hospital, as producers of goods for interstate commerce. 29 C.F.R. Section 776.4(a). The question, of course, is whether all of Defendants' employees should have been paid according to the Act, or only those who engaged in the activities on behalf of Reid Memorial Hospital. Although, properly, this is an issue relevant to the damages phase of the instant case, the Court sets forth its observations on the record in order to assist the parties in this future phase of this trial.

■ The testimony of Defendant Maxton indicates Defendants' difficulty in proving with certainty which of its employees worked on the Reid Memorial Hospital account and which did not. (Testimony of Gary Maxton, Tr. 66–67). The Court feels that the approach which should govern in such a case is that set forth in 29 C.F.R. Section 776.4(b). This regulation provides that the burden of effecting segregation between covered and non-covered work as between particular work weeks for a given

employee or as between different groups of employees is upon the employer. An employer must be prepared to show and to demonstrate from his records which employees' work was covered and which was not, with respect to coverage under Sections 206 and 207 of the Act. *Gilreath v. Daniel Funeral Home, Inc.*, 421 F.2d 504, 511 (8th Cir.1970).

For the above reasons, the Court concludes that Plaintiff has carried his burden of establishing that Defendants' employees were engaged in the production of goods for interstate commerce. Plaintiff has established a *prima facie* case of coverage for all employees, subject to more definite proof on Defendants' part as to who did what work and during which work weeks.

## B. WORK WHICH IS "CLOSELY RELATED" OR "DIRECTLY ESSENTIAL TO THE PRODUCTION OF GOODS FOR INTERSTATE COMMERCE"

In Part A above, the Court has already set forth the definition of "produced" included in 29 U.S.C. Section 203(j). Under this definition, an employee is "deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting or in any other manner working on such goods *or in any closely related process or occupation directly essential to the production thereof,* in any State." Plaintiff's second argument in favor of coverage in this case is that the microfilm services which Defendants' employees provided to its customers bring it within this definition of work which is closely related or directly essential to the production of goods for interstate commerce.

■ The construction given to this subset of coverage under Section 203(j) is broad. First of all, the fact that Micro-Chart is an independent company, rather than the producer of goods for interstate commerce, is not determinative. If the processing of microfilm records can be shown as having the required relationship under

the Act to the production of goods for interstate commerce, then the activity of Defendants' employees is covered, even though the producer of the goods travelling in interstate commerce is a customer of the employer Micro-Chart rather than Micro-Chart itself. *Roland v. Walling*, 326 U.S. 657, 664, 66 S.Ct. 413, 416, 90 L.Ed. 383 (1946); 29 C.F.R. Section 776.19(a)(1).

Second, a wide variety of activities have been held to be "closely related" or "directly essential" to the production of goods for interstate commerce. In *Borden Company v. Borella*, 325 U.S. 679, 683, 65 S.Ct. 1223, 1225, 89 L.Ed. 1865 (1945), the Supreme Court held that the accounting, clerical, administrative, and management functions which accompany the physical labor required for production of a good are considered tasks which are closely related and directly essential to production. The Secretary's regulations, at 29 C.F.R. Section 776.18(a), explain that bookkeepers, stenographers, clerks, accountants, auditors, testers, researchers, and other white collar workers perform services which are closely related and directly essential to the production of goods for interstate commerce.

At the trial in this matter, Richard Cultice, Manager of General Accounting for Hobart Brothers, testified that Hobart Brothers produces goods for interstate commerce, and that the company does not have a microfilm department. (Tr. 38, 40). Cultice testified that Defendant Micro-Chart microfilmed, from 1979 through 1981, warranty records documenting the tests which were performed on Hobart equipment which was sold to other purchasers. These quality control records are used by Hobart Brothers to compare test results performed on a machine at the time of sale, as compared to test records documenting the effects of a repair. (Testimony of Richard Cultice, Tr. 38–39). In their answers to interrogatories, Defendants indicated that their employees worked on engineering data cards of Hobart Brothers as well. (Plaintiff's Exh. 1, at 16).

There was also testimony produced by Plaintiff that Defendants' employees spent approximately 40 hours per year from 1979 through 1981 filming records for B.F. Goodrich. (Testimony of Gary Maxton, Tr. 62). In its answers to interrogatories, Defendants indicated that the records involved were specification files, engineering data files, and inactive manufacturing files. (Plaintiff's Exh. 1 at 17). This Court notes, as it did at the trial, that there is no doubt that B.F. Goodrich produces goods for interstate commerce.

Defendants attempt to rebut this type of coverage under the Act by claiming that Defendant Micro-Chart falls within the definition of 29 C.F.R. Section 776.19(b). This regulation discusses local merchants who sell to local customers within the same state items which are not specifically designed for use in the production of other goods, examples being the sale of paper towels, record books, paper clips, or paint. In the event of such a local merchant selling goods of this nature within the state, the local merchant's employees would not be found to be doing work which was "closely related" or "directly essential" to production of goods for interstate commerce. After comparison of this example of a local merchant and the types of goods and wares which it sells to the types of clerical and accounting functions which are covered employment under 29 C.F.R. Section 776.18, this Court cannot agree with Defendants. The types of engineering, quality control and warranty records which Defendants' employees have microfilmed for interstate manufacturers such as Hobart Brothers and B.F. Goodrich removes the activities of Defendants' employees from the type of local merchandising discussed in 29 C.F.R. Section 776.19(b).

The Court concludes that to the extent that Defendants' employees worked on the type of records which it filmed on behalf of manufacturers such as Hobart Brothers and B.F. Goodrich, such employees were covered during the applicable work week by the Act. Again, the considerations outlined in Part A above, as to Defendants' burden to show which employees were engaged during which times in this type of

covered activity, are pertinent herein as well.

## C. EXEMPTION FOR RETAIL OR SERVICE ESTABLISHMENTS

■ Defendants contend, no doubt sincerely, that if coverage is found under the Act, that Defendant Micro-Chart is nonetheless entitled to the exemption contained in 29 U.S.C. Section 213(a)(2). Section 213(a)(2) provides that the provisions of 29 U.S.C. Sections 206 and 207 do not apply to any employee employed by any retail or service establishment "if more than 50 percentum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located," and if the establishment meets certain other criteria. Section 213(a)(2) goes on to provide that a retail or service establishment is defined as an establishment "75 percentum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." Defendants have the burden of proving the affirmative defense that they are entitled to this exemption from coverage under the Act.

■ The Court, having carefully reviewed the evidence and the trial in this case, simply cannot find the Defendants have carried their burden of proving that Defendant Micro-Chart should be exempt under Section 213(a). The key criterion under the statute and under the Secretary's regulation is whether Micro-Chart has a "retail" concept. Only if it has a retail concept can it be exempt under Section 213. Scrutiny of the Secretary's examples of establishments which have a retail concept (29 C.F.R. §§ 779.318, 779.319, 779.320) and those which lack a retail concept (29 C.F.R. § 779.317) persuades this Court that Defendant Micro-Chart's business is much more similar to those establishments which *lack* a retail concept and which therefore are not exempt under Section 213(a). Although microfilming is not specifically listed, both blue-printing and photostating establishments are listed as non-exempt under the Act, as are printing and binding establishments. Moreover, 29 C.F.R. Section 779.318 and 779.319 explain that an additional criteria is that a retail establishment typically must sell goods or services to the general public or at least be open to the general public. While Defendant contends that any member of the public could walk in to Defendant Micro-Chart, there is no evidence whatsoever that any individuals, as opposed to business establishments, have any use for Defendant Micro-Chart, whether in person or over the telephone. *Compare* 29 C.F.R. Section 779.319.

For these reasons, the Court finds that Defendants have failed to carry their burden of showing their entitlement to the exemption contained in 29 U.S.C. Section 213(a)(2).

## D. DAMAGES

The Court makes no findings as to damages, as the instant case was limited strictly to the issue of coverage under the Act. In Parts A and B of Section III, this Court provided observations which it believed would be helpful to the parties in the damages phase of this case. The Court now sets forth certain observations as to the statute of limitations, which will also be relevant to the determination of damages in this case.

■ In this Court's understanding, in actions brought pursuant to the Act, an employer is liable for back pay for a period of two years, unless the Plaintiff proves a "willful" violation of the Act, in which case the liability is extended to three years. 29 U.S.C. Section 255(a); *Schulte v. Wilson Industries,* 547 F.Supp. 324, 343 (S.D.Tex. 1982). The traditional definition of willfullness for purposes of 29 U.S.C. Section 255(a) was that a violation was willful if the employer knew that the Act was "in the picture" and, thus, that the Act might govern the employer's conduct. *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139 (5th Cir.1972).

In the Supreme Court's recent decision in *Trans World Airlines, Inc. v. Thurston,*

469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court provided a definition of "willful" for purposes of 29 U.S.C. § 626(b), the liquidated damages provisions of the Age Discrimination in Employment Act. The Supreme Court purposely avoided deciding what the proper definition of "willfullness" should be in cases involving the statute of limitations contained in 29 U.S.C. Section 255(a). The *Thurston* Court then expressly rejected, for purposes of 29 U.S.C. § 626(b), the *Jiffy June* "in the picture" analysis in favor of a more stringent willfullness standard, that being whether the employer knew or showed reckless disregard for whether the ADEA prohibited its conduct.

This Court makes no decision as to whether or not the *Thurston* standard should be the standard which Plaintiff must prove in establishing that Defendant Micro-Chart committed a willful violation of the Act. This Court does note, however, the consensus of the courts which have considered this issue is that *Thurston* does *not* govern the definition of "willful" contained in 29 U.S.C. Section 255(a). Rather, these courts have abided by the standard set forth in *Coleman v. Jiffy June Farms*, that being that an employer willfully violates the Act if it knew or had reason to know that the Act was "in the picture," or that the Act was applicable to its employment practices. *See, e.g., Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1117 (4th Cir.1985); *EEOC v. McCarthy*, 768 F.2d 1, 5 (1st Cir.1985); *Soler v. G & U, Inc.*, 628 F.Supp. 720, 723 & n. 3 (S.D.N.Y.1986).

E. CONCLUSION

In summary, the Court concludes that Defendants' employees are covered by the Fair Labor Standards Act, as Plaintiff has established a *prima facie* case that they were engaged in the production of goods for interstate commerce and that they engaged in work that it is closely related and directly essential to the productions of goods for interstate commerce. Defendants are not entitled to an exemption under 29 U.S.C. Section 213(a)(2) from coverage under the Act.

A telephone conference call with the Court is set for Friday, September 26, 1986 at 4:30 p.m. for the purposes of discussing the remaining damages phase of this case.