DURKIN, Secretary of United States Department of Labor v. CASA BALDRICH, Inc.

Civ. No. 4653.

United States District Court
D. Puerto Rico, San Juan Div.
March 31, 1953.

72

Kenneth P. Montgomery and Francisco A. Gil, Santurce, Puerto Rico, for plaintiff.

Orlando J. Antonsanti and Rene Benitez, San Juan, Puerto Rico, for defendant.

RUIZ–NAZARIO, District Judge.

I

By judgment of this Court entered on December 24, 1948, in this case, defendant was enjoined and restrained from violating the provisions of section 15(a) (2) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., specifically, from paying less than the rates fixed under Sections 6 and 8(e) of the Act, and from violating the overtime provisions of Section 7 of the Act. Petitioner has moved the Court to punish respondent for contempt, charging that respondent since December 10, 1951 has failed and refused to comply with the terms of the aforesaid judgment.

The evidence adduced at the hearing on said motion for contempt shows that respondent's modus operandi, location of establishment, printed products and general trade have undergone no substantial change since the injunction was entered in 1948. However, respondent contends that the 1949 amendments have so narrowed coverage that workers producing forms and stationery used in industry producing goods for interstate commerce are not covered, because such occupations are not "closely related" and "directly essential" to production. Respondent operates two printing shops and a stationery store. A substantial portion of the printed goods, such as payrolls, office forms, production records, stationery, shipping records and special forms, is sold to industrial firms in Puerto Rico who are engaged in commerce or in the production of goods for commerce. As indicated by the Court in the original case, it is doubtful whether the productive flow of goods in commerce could be maintained without the payrolls, production records, office forms, stationery, shipping records.

Industry as we know it today would grind to a halt without the help of printed forms and records for, without their aid, production would be uneconomic under the conditions of the modern world. Surely no one can seriously suggest that the production of such printed matter is not "closely related" and "directly essential" to the production of goods for commerce.

The summary of the Conference Agreement on the 1949 Amendments, 95 Cong. Record page 14874 states as follows:

"Typical of the classes of employees whose work is closely related and directly essential to production, within the meaning of section 3(j) as amended by the conference agreement, are the following employees performing tasks necessary to effective productive operations of the producer:

"1. Office or white-collar workers. Borden Co. v. Borella, 325 U.S. 679 [65 S.Ct. 1223, 89 L.Ed. 1865]; Roland Electrical Co. v. Walling, 326 U.S. 657 [66 S.Ct. 413, 90 L.Ed. 383]; Meeker Cooperative Light & Power Ass'n v. Phillips, 2 Cir., 158 F.2d 698; Walling v. Friend, 8 Cir., 156 F.2d 429; Hertz

Drivurself Stations v. U. S., 8 Cir., 150 F.2d 923."

Certainly the workers engaged in the printing occupations which produce the printed matter with which the white collar workers perform their tasks must be held to be covered.

This is a question as to which no doubt must exist after the latest expression of the Supreme Court on the subject. See: Alstate Construction Company v. Durkin, 73 S.Ct. 565, and Thomas v. Hempt Brothers, 73 S.Ct. 568.

Under said decisions the "closely related" and "directly essential" tests of the 1949 amendment play no role in determining coverage of employees engaged in operations such as those undertaken by respondent's employees. Neither is it necessary that the goods produced by said employees be actually transported in commerce.

As the record here discloses, the printed matter is produced by defendant's employees mostly to fill orders of customers such as steamship companies, sugar companies, banks, wholesalers, attorneys, airlines, railroads, commission merchants and other businesses, which are actually engaged in commerce and the employees of which are engaged in commerce.

The "closely related" and "directly essential" tests only apply in connection with the production of goods to be further used by employees engaged in the production of goods for commerce and not where the goods produced are to be further used by employees engaged in commerce.

The goods produced by respondent's employees are mostly used or consumed by employees who, by serving individuals or concerns which are in commerce, are themselves engaged in commerce and, therefore, under the above holdings of the Supreme Court, said employees of respondent are engaged in the production of goods for commerce.

In addition, the evidence shows a certain amount of production for customers in the Virgin Islands and the Dominican Republic. These cases of course constitute direct production for interstate commerce,

and respondent, although a veteran of the original trial of this case, made no effort to segregate his workers in connection with its interstate and intrastate production.

Thus, the respondent still falls within the coverage of the Act, as amended.

## II

Respondent, who unsuccessfully contended in the original proceeding that its employees are employed in a local retail establishment, again asserts that it is now exempt as such local retail establishment, under the 1949 amendments to Section 13 (a) (2) of the Act. 29 U.S.C.A. § 213(a) (2).

The applicable exemption provisions of the Act now read as follows:

"(a) The provisions of sections 6 and 7 of this title shall not apply with respect to (1) * * *; or (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; or (3) * * * or (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: Provided, That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located; or * * *.

Although it seems clear from the language thereof that the above provision does not apply to manufacturing activities but rather to the sale of goods and services,

the position of petitioner is strengthened by the Statement in 95 Cong. Rec. 14942, that

"The provisions of section 13(a) (4) do not make retail establishments of manufacturing establishments merely because such establishments have, or create, a retail outlet in the same building. The section does not permit the tail to wag the dog, and the nature of the establishment is still controlling. If it is not a retail establishment it is not exempt, even though it meets all the other tests."

Nevertheless, the 1949 amendments provide for a situation where an establishment would be exempt as retail, save for the fact that it manufactures the goods it sells, as in 13(a) (4) above.

 It is compliance with requirements of this section that respondent has the burden of proving. However, 13(a) (4) does not stand alone; a concern manufacturing goods which it sells does not meet the test unless 75% of its annual dollar volume of sales of goods is not for resale and is recognized as retail sales in the particular industry. Thus if the *establishment* is not a retail establishment because the prescribed percentage of its sales is not recognized as retail sales in the particular industry, it is not exempt under 13(a) (4) merely because its factory has a retail outlet attached.

 Expert testimony was introduced to show that the sales in this case were retail, and that they are recognized as retail by the local chamber of commerce. However, it is not recognition "by" the industry that makes an establishment exempt. See Tobin v. Household Finance Corp., D.C., 106 F.Supp. 541, where it was held that the mere fact that small loan companies were regarded in financial industry as retail service establishments could not establish exempt category of their employees, and that the 1949 amendments providing for test of industry recognition in connection with exemption of retail sales or service establishments did not manifest congressional intent to make recognition in the industry the sole criterion for determining scope of exemption, but merely abolished the consumer's use test of whether sales were retail, previously applied by the Courts.

The legislative history of this amendment clearly demonstrates what Congress intended to be the test in this connection.

Interpretative Bulletin—Part 779 of October 1950 of the Wage and Hour and Public Contracts Division of the United States Department of Labor quotes, at page 14, footnote 28, some excerpts from the debates in Congress on this amendment. Said footnote reads as follows:

"28—In commenting on the question as to the difficulty involved in determining whether a sale or service is recognized as retail in this particular industry, Representative Lucas said: "The other charge against my amendment has been that it would make the exemption difficult, if not impossible, to apply, because years of litigation would be required to ascertain what is recognized as a retail sale in various industries. This charge is completely baseless. *The Administrator, through his 11 years of administration of the existing law, has come to know quite well what sales and services are recognized as retail in each particular industry.* Moreover, each industry knows also what such sales and services are. Only in the rare instance where the Administrator and industry disagreed on this matter would a court test be required. In any event, no enforcement burden is placed upon the Administrator. The employer claiming exemption would have the burden of proving that at least 75 per cent of his sales are recognized as retail in the industry. The problem is the employer's and not the Administrator's. The latter, therefore, is in no position to complain about the difficulty of establishing whether particular sales are recognized in the industry as retail." 95 Cong. Rec. p. 11116.

In answer to a question by Senator Douglas as to who is to define what is recognized as retail sales or services

in the particular industry, Senator Holland replied: *"Who but the Administrator? If the administrative or interpretative ruling is not regarded as sound by the individual person concerned, then he can appeal; and then the matter will be ruled on by the courts."* 95 Cong. Rec. p. 12501. Commenting further, Senator Holland said: "It seems to me under the law as suggested by the amendment a clear test would be one discoverable in any industry by honest search, and that the Administrator would be given plenty of authority to discover what is the rule, what is the meaning of the term in the particular industry, and to give effect to it. If he should find a clouded situation, he always has access to the courts." 95 Cong. Rec., p. 12502. In answer to a question by Senator Aiken as to whether the industry recognition test would not "throw the situation wide open for each industry to determine whether its sales shall be considered retail or wholesale", Senator Holland replied as follows: "It is not the judgment of the sponsors of the amendment that that would be the result. On the contrary, it is our belief that the Administrator would have a function to perform, and if he goes astray in the judgment of individuals who are affected, he could be appealed from, the case could be taken to court. It is our judgment that we are simply using words and terms in the way they are customarily understood, just as was done on the passage of the original act, except that we are going far enough to leave something definitive by this amendment." 95 Cong. Rec., p. 12510." (Emphasis supplied.)

Respondent is one of the two largest printing establishments in Puerto Rico both in point of volume of business and number of employees. Its total sales during the period involved amounted to $264,563.62 of which only $59,833.52 were over the counter sales. Not only is the total volume far too great to be considered characteristic of retail sales under the conditions prevailing in Puerto Rico, but a break down of sales to respondent's principal customers shows that its operations do not qualify as retail "sales".

Teachers Association ......... $10,949.59
Fomento (Puerto Rice Development Co.) .................. 9,577.89
P. R. Aqueduct and Sewerage Service Authority ......... 5,659.80
Banco Popular de Puerto Rico 5,283.90
Government of the Capital...... 4,866.97
P. R. Water Resources Authority ...................... 4,177.30
P. R. Housing Authority...... 3,732.33

Some of these sales, i. e., printing of customers' names on checks for the Banco Popular or the printing of personal checks for this and other banks, or the printing of forms are not services or sales to the ultimate consumer, for the banks and other entities turn them over to their customers or members for their personal use.

### III

Section 17 of the Act was amended in 1949 to the effect that no court shall have jurisdiction, in any action brought by the Administrator to restrain violations of section 15, to order payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional amount as liquidated damages.

It is contended that the Court under this amendment cannot by way of punishment for contempt order restitution of unpaid minimum wages, etc., as in McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599, and in McComb v. Norris, 4 Cir., 177 F.2d 357.

Aside from a 1950 case Tobin v. Alma Mills, 92 F.Supp. 728, reversed on other grounds, 4 Cir., 192 F.2d 133, decided after the amendment, we have the statement of the Conference Report on these amendments, as authority for ordering the present contemnor to make restitution, and I quote from U. S. Code Congressional Service, 81 Congress, 1st Session, 1949, Part 2, p. 2273:

"The House bill adopted the language of section 17 of the act without

change. The Senate amendment altered this section to include a more precise description of the United States courts having jurisdiction of actions to restrain violations. The legal effect of both versions was the same. The conference agreement adopts the Senate version with a proviso to the effect that no court shall have jurisdiction, in any action brought by the Administrator to restrain violations of section 15, to order payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages. This proviso has been inserted in section 17 of the act in view of the provision of the conference agreement contained in section 16(c) of the act which authorizes the Administrator in certain cases to bring suits for damages for unpaid minimum wages and overtime compensation owing to employees at the written request of such employees. Under the conference agreement the proviso does not preclude the Administrator from joining in a single complaint causes of action arising under section 16(c) and section 17. Nor is it intended that if the Administrator brings an action under section 16(c) he is thereby precluded from bringing an action under section 17 to restrain violations of the act. Similarly, the bringing of an injunction action under section 17 will not preclude the Administrator from also bringing in an appropriate case an action under section 16(c) to collect unpaid minimum wages or overtime compensation owing to employees under the provisions of the law. *Nor is the provision intended in any way to affect the court's authority in contempt proceedings for enforcement of injunctions issued under section 17 for violations occuring subsequent to the issuance of such injunctions. The provision, however, will have the effect of reversing such decisions as McComb v. [Frank] Scerbo [& Sons] 2 Cir. [177 F.2d 137] 17 Labor Cases No. 65,297, in which the court included a restitution order in an* *injunction decree granted under section 17."* (Emphasis supplied.)

It seems clear that respondent contemnor may be ordered by the Court, by way of purging itself of contempt, to make restitution for the period involved.

In conclusion:

1.—Respondents' employees are within the coverage of the Fair Labor Standards Act, as amended.

2.—Respondents' establishments are not retail or service establishments under Section 13(a) (2) or (4) of the Act, as amended.

3.—Respondent is in contempt for failing to comply with this Court's judgment of December 24, 1948.

Findings of fact, conclusions of law and judgment will be entered accordingly.