HOMEMAKERS HOME AND HEALTH CARE SERVICES, INC., and Homemakers International Company, Plaintiffs-Appellants,

v.

Claibourne W. CARDEN, Area Director Employment Standards Administration U. S. Department of Labor, et al., Defendant-Appellee.

No. 74–1680.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 5, 1975.

Decided June 21, 1976.

Rehearing Denied Aug. 17, 1976.

James F. Neal, Aubrey B. Harwell, Jr., Neal & Harwell, Nashville, Tenn., David E. McGiffert, Theodore Garrett, Covington & Burling, Washington, D. C., for plaintiffs-appellants.

Ralph D. York, U. S. Dept. of Labor, Charles H. Anderson, U. S. Atty., Martha Johnson, Marvin Tincher, Regional Atty., U. S. Dept. of Labor, Nashville, Tenn., Donald S. Shire, Darryl Anderson, Deputy Associate Sol., U. S. Dept. of Labor, Washington, D. C., for defendant-appellee.

Before PECK and McCREE, Circuit Judges, and MILES *, District Judge.

* Honorable Wendell A. Miles, United States District Judge for the Western District of Michigan, sitting by designation.

MILES, District Judge.

This appeal raises novel issues of first impression under the so-called "retail exemption" to the minimum wage requirements of the Fair Labor Standards Act. Appellant Homemakers Home and Health Care Services, Inc., and its wholly-owned subsidiary, Homemakers International Co., operates a series of local offices which engage in the business of providing domestic and health care services on a temporary basis. They appeal a judgment by the District Court, Middle District, Tennessee that this enterprise is not a "retail or service establishment" exempt under Section 13(a)(2) of the Act, 29 U.S.C. § 213(a)(2). The status of approximately 120 of Homemakers' local offices is at issue.[1]

Commencing in 1971, Homemakers sought the opinion of the Administrator of the Wage and Hour Division of the Department of Labor regarding the applicability of the Section 13(a)(2) exemption to its operations. In a series of rather short letters, culminating in an opinion letter dated November 17, 1971, and reaffirmed by another letter dated August 20, 1972,[2] the Administrator rejected Homemakers' contention that it was exempt under the Act finding that Homemakers' business lacked a "retail concept," and that its operations were not significantly different from those of an employment agency, an industry which the Administrator has consistently found to be without a "retail concept."

At that point, Homemakers voluntarily complied with the requirements of the Act and subsequently filed this declaratory judgment action in the District Court for the Middle District of Tennessee, seeking to test the Administrator's interpretation. Appellees answered and filed a counter-

claim under Section 17 of the Act, 29 U.S.C. § 217 to recover alleged unpaid back wages and to permanently enjoin further claimed violations of the Act.

The parties below were, by agreement, able to considerably narrow the range of issues before the trial court, and this court. In a stipulation executed on February 1, 1974, both parties agreed to figures setting forth the annual sales of each of 67 of Homemakers' local offices, along with the percentage of that amount which was not for resale. The parties further stipulated to the fact that Homemakers and its local offices constitute an enterprise engaged in commerce within the meaning of the Act. Thus, as both parties concede, the only issue left before the District Court was whether Homemakers qualified as a "retail or service establishment" as defined in the Section 13(a)(2) exemption.

Following a non-jury trial, the District Judge issued Findings of Fact and Conclusions of Law, agreeing with the Administrator's interpretation, and holding that because Homemakers had failed to meet the tests included in the "retail or service establishment" definition, Section 13(a)(2) was inapplicable to its operations.[3] Homemakers appeals that decision and takes issue with two of the District Court's conclusions. *First,* appellants argue that the District Court finding that Homemakers' business lacked a "retail concept" was not supported by the evidence and was based on an unwarranted deferral to an unsupported agency decision. *Secondly,* they contend that the Court's holding that Homemakers had not proved that 75% of its sales were "recognized as retail" in the industry rested on an erroneous interpretation of the burden of proof required under this test.

1. There are a total of approximately 172 offices in the Homemakers' network. Of these, 120 are owned by Homemakers and the remainder are independently franchised offices. These latter are separate corporations, one of whose stock is owned by Homemakers, and they are not parties to this suit. Neither is the status of Homemakers' home office and administrative employees at issue here.

2. This correspondence comprised Plaintiff's Exhibits 8 and 9 and Defendant's Exhibits C and E before the District Court.

3. By an order dated May 3, 1974, trial on the issues raised by the counterclaim is being held in abeyance pending this appeal.

At all times pertinent to this lawsuit, Section 13(a)(2) of the Act, 29 U.S.C. § 213(a)(2) provided as follows:

The provisions of sections 6 and 7 shall not apply with respect to—

(2) any employee employed by any retail or service establishment . . . if more than 50 per centum of such establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, and such establishment is not in an enterprise described in section 3(s) or such establishment has an annual dollar volume of sales which is less than $250,-000 (exclusive of excise taxes at the retail level which are separately stated). A "retail or service establishment" shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry: . . . [4]

■ This Court has had occasion recently to consider the analysis of the Section 13(a)(2) exemption in *Brennan v. Southern Productions, Inc.*, 513 F.2d 740 (6th Cir. 1975). As summarized in that case, threshold questions under this section are:

The first step in determining whether the "retail or service establishment" exemption applies, is to ascertain whether the concept of retail selling of goods or services exists with respect to the establishment in question. The establishment must be part of a business or industry to which the "retail concept" applies. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 202, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966); 29 C.F.R. § 779.316.

\* \* \* \* \* \*

The second step in ascertaining whether the retail or service establishment exemption applies, is reached only if it is first determined that the retail concept applies to the establishment's business. *Idaho Sheet Metal Works, Inc. v. Wirtz, supra*, 383 U.S. at 202, 86 S.Ct. 737. The employer claiming the exemption must prove that 75% of the establishment's annual dollar volume of sales "is recognized as retail sales or services in the particular industry." Sec. 13(a)(2), as amended. 29 U.S.C. § 213(a)(2). *Southern Productions, supra* 744–745.[5]

■ The case also reaffirmed a number of standing principles governing the judicial review of administrative determinations under the Fair Labor Standards Act. First of all, exemptions from the Act are to be narrowly construed against the party asserting them and "their application limited to those establishments plainly and unmistakably within their terms and spirit." *Southern Productions, Id.; Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Fletcher v. Grinnell Bros.*, 150 F.2d 337, 340 (6th Cir. 1945). Additionally, the employer has the burden of showing that it is within the purview of the exemption claimed by it. *Southern Productions, Id.; Mitchell v. Kentucky Finance Co.*, 359 U.S. 290, 291, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959). It is settled that the agency's interpretations and opinions are not binding on this Court. Rather, they are to be treated as "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944) *Southern Productions, Id.*

4. Subsequent to the ruling below, this section was amended by Section 8 of the Fair Labor Standards Amendments of 1974, Pub.L. 93–259, 88 Stat. 55, 62, effective beginning January 1, 1975. The amendments reduce the dollar test stated in the earlier version of Section 13(a)(2) from $225,000 to zero in four steps, the last taking effect on January 1, 1977. It is understood that this amendment will effectively phase out the exemption for local establishments which are part of a larger chain. However, the definition of "retail or service establishment," which is at the heart of this lawsuit, remains unchanged.

5. Analytically, this case is similar to *Southern Productions*. As in this case, the parties there stipulated to all the requirements of the exemption except those embodied in the "retail or service establishment" definition. 513 F.2d 742–743.

As there is no dispute over Homemakers' structure and method of operations, we turn to the applicability of the § 13(a)(2) exemption, and within the framework set forth above, we undertake the analysis outlined in *Southern Productions*.

## I.

### RETAIL CONCEPT

The starting point for ascertaining whether a retail concept applies to appellant's endeavors is well stated by Judge Boreman in *Wirtz v. Modern Trashmoval Inc.*, 323 F.2d 451 (4th Cir. 1963), *cert. den.* 377 U.S. 925, 84 S.Ct. 1222, 12 L.Ed.2d 216 (1963).

"In determining whether or not a business activity is a 'retail or service establishment' within the meaning of the section 13(a)(2) exemption, we think the most satisfactory approach is to examine the facts of record as to the nature and conduct of its business in the light of general criteria developed under the Act since its enactment in 1938." Id. at 465

Under this formula, before considering the retail concept itself, we turn first to a more complete description of Homemakers' operations.

Homemakers was organized in 1965 in order to provide domestic help and health care employees such as housekeepers, registered nurses, licensed practical nurses, orderlies, companions, etc. on a temporary basis, both to private individuals and to medical facilities for staff augmentation. The work for a given customer can last from a few hours to several weeks. A number of these employees are live-ins, remaining with their charges throughout the course of their assignment. Homemakers' employees are bonded and insured and receive training and supervision from the local office. The services rendered are performed pursuant to work orders drawn up by the local office and the work is monitored by supervisory personnel. The local office handles both collections from customers and the payments of its employees.

The second step of this process, that of ascertaining the "criteria developed under the Act," poses a problem of considerably greater magnitude. Our dilemma is compounded by the fact that Homemakers and like services did not even exist at the time Section 13(a)(2) was enacted.

■ The form of this Section current during this case is a result of amendments to the Act enacted in 1949 in response to Congressional dissatisfaction with the so-called "business use" test which had been developed by the Administrator and approved by the Supreme Court in *Roland Electrical Co. v. Walling*, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946), as a prime criterion for determining the applicability of the term "retail or service establishment." The debates on these amendments reveal that they were intended to clarify the exemption and substitute a more flexible test in place of the "business use" formula.[6] The basic intent behind this legislation was summarized by the Supreme Court in *A. H. Phillips, Inc. v. Walling*, 324 U.S. 490, 497, 65 S.Ct. 807, 810, 89 L.Ed. 1095 (1945):

"From the standpoint of its legislative ancestry, Section 13(a)(2) is the offspring of a manifest desire to exclude from the scope of the Act "business in the several States that is of a purely local nature." Sen.Rep. 884, 75th Cong., 1st Sess., p. 5. Congress was interested in exempting those regularly engaged in local retailing activities and those employed by small local retail establishments, epitomized by the corner grocery, the drug store and the department store. It felt that retail concerns of this nature do not sufficiently influence the stream of interstate commerce to warrant imposing the wage and hour requirements of them."

During the debate on these amendments, various Senators attempted to define what

---

**6.** See 95 Cong.Rec. 11116, 12494–12495, 12515–12516 (1949) and *Mitchell v. Kentucky Finance, supra.*

an exempted retail establishment would be.[7] Their efforts did not go beyond generalized descriptions such as "peculiarly local business," "small business," "local businesses," and "retail stores of all kinds." These phrases, however, bear only indirectly upon the narrow determinations confronting us here.

■ The pronouncements of the Administrator in this case provide us with little additional assistance.[8] In the letter of November 17, 1971 holding appellant not to be exempt, the Administrator relies on the case of *Yunker v. Abbye Employment Agency*, 32 N.Y.S.2d 715 (Mun.Ct. City of New York 1941) and states that with respect to the retail concept:

"The entire legislative history of this section of the Act and numerous court cases based on this exemption indicate that the exemption is intended to apply to establishments which are engaged in the traditional selling of goods or services to the public at the end of the stream of distribution. Typical of the establishments Congress considered for exemption are grocery stores, restaurants, hotels, clothing stores, barber shops, beauty shops,

drug stores, etc. Employment agencies and firms similarly providing temporary employees, while they may perform 'service' within some meanings of the term, do not perform 'service' of the kind paid to consumers by those service establishments which were within the meaning of the retail or service establishment exemption. The legislative debates on this exemption named telephone, gas and electric, and credit companies along with a number of others as businesses outside the exemption. This demonstrates that not everything the consumer purchases can be a retail sale of goods or services." *Idaho Sheet Metal Works v. Wirtz*, 383 U.S. 190, 86 S.Ct. 737, 15 L.Ed.2d 694; reh. den., 383 U.S. 963, 86 S.Ct. 1219, 16 L.Ed.2d 305.

Supplementing these contentions, appellees argue in this Court that Homemakers is analogous to businesses listed in the Administrator's regulations[9] as not having a retail concept. They also cite us to a series of cases in which employment agencies, ambulance services, and companies providing watchmen services were held not exempt under the Act.[10] A review of this material

---

7. Cong.Rec. 12492, 12498, 12501, 12502, 12505, 12510, 12515 and 14932X (1949).

8. Appellees argue that the pre-1949 rulings relied upon by the Administrator in this case are entitled to special consideration under the "unique imprimatur" of Section 16(c) of the 1949 Fair Labor Standards Act amendments. This Section reads, in pertinent part, as follows:

"Any order, regulation, or interpretation of the Administrator of the Wage and Hour Division or of the Secretary of Labor, . . . in effect under the provisions of the Fair Labor Standards Act of 1938, as amended, on the effective date of this Act, shall remain in effect as an order, regulation, interpretation, or agreement of the Administrator or the Secretary, as the case may be, pursuant to this Act, except to the extent that any such order, regulation, interpretation, or agreement may be inconsistent with the provisions of this Act . . . ."

Since we view our task as necessarily involving a consideration of whether or not the rulings involved here are "inconsistent with the provisions of this Act," we do not see in what way this Section enhances the status of the Administrator's pronouncements, or otherwise

changes the previously discussed standards of review.

9. Appellees also cite us to an Interpretation Bulletin issued in 1938 and revised in 1941. On comparison, however, we find that the more recent regulations touch all the subjects embraced in the Bulletin which are relevant to this case, and also include important additions and revisions reflecting the evolution of Section 13(a)(2).

10. Employment agencies: *Brennan v. Great American Discount and Credit Company, Inc.*, 477 F.2d 292, 295 (C.A. 5, 1973); *Lorinser v. B & B Employment, Inc.*, 190 N.W.2d 21 (S.Ct., N.D.1971); *Mitchell v. Glader Corp.*, 13 W.H. Cases 51 (N.D.Del.1956); *Schussler v. Employment Consultants, Inc.*, 333 F.Supp. 1387 (N.D. Ill.1971); *Yunker v. Abbye Employment Agency, Inc.*, 32 N.Y.S.2d 715, 723 (Mun.Ct.1941).

Ambulance Services: *Duffy v. Oele*, 274 F.Supp. 307 (W.D.Mich.1967); *Wirtz v. A–1 Ambulance Service*, 299 F.Supp. 197 (E.D.Ark. 1969).

Watchmen services; *Durkin v. Joyce Agency, Inc.*, 110 F.Supp. 918, 924 (N.D.Ill., 1953), *aff'd sub nom. Mitchell v. Joyce Agency, Inc.*, 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740 (1955),

leads us to conclude that it is not persuasive. As we see it, Homemakers' functions do not parallel those of an employment agency. Involved in the cited cases are businesses which either locate employees for private companies or find jobs in private companies for persons seeking employment. Homemakers does neither of these. The cases dealing with ambulance services emphasize the fact that these businesses engage primarily in a specialized form of transportation, and as such is not within the scope of the "retail concept." On the evidence before us, Homemakers certainly does not engage in this type of activity. Nor is Homemakers properly categorized with businesses which provide watchmen, at least those which have been the subject of decided cases. All of these cases involve businesses which supply guards for other commercial establishments. However, in the instant case, the District Court found that over 75% of the sales of the Homemakers' offices involved in this suit were to "private individuals for personal or family consumption and not for resale." [11] Perusal of the Administrator's regulations, however, reveal that in determining the retail status of a business activity, operations conducted for other businesses are distinguished from those conducted for individuals.[12] This same distinguishing factor runs through the listing of non-exempt businesses in the regulations which the appellees urge upon us.[13]

In sum, we feel that none of these sources specify the sense of the "retail concept" with sufficient clarity. Neither do they include enough of the attributes of appellant's business in their respective fact situations and examples to be considered binding upon us.

Other parts of the regulations, however, offer considerably more help as they do embark on a characterization of the traits underlying the "retail concept." 29 C.F.R. § 779.318 reads in part:

"Characteristics and examples of retail or service establishments.

(2) Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business *organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. . . . It provides the general public its repair services and other services for the comfort and convenience of such public in the course of its daily living."*

A comparison of this description with that of Homemakers' services shows that Homemakers possesses virtually all the above enumerated characteristics. Homemakers' services are available to the general public and are for the "comfort and convenience" of the public "in the course of its daily living." Although not everyone will be in need of its services, clearly Homemakers does attend to "everyday needs of the community." More importantly, we agree that Homemakers disposes of "small quantities" of its services to recipients "at the very end of the stream of distribution." Accordingly, we conclude that we must disagree with the District Court and find that Homemakers does possess the "retail concept" necessary to the Section 13(a)(2) exemption. Considering the ambiguity of the authorities in this area, we cannot say either that this holding is entirely free from doubt or that the District Judge's conclusion to the opposite was manifestly in error. Definitions such as this are within the prerogative of the legislature and this Court

rev'g, 7 Cir., 211 F.2d 241; *Walling v. Sondock*, 132 F.2d 77, 78–79 (C.A. 5 1942); *Walling v. New Orleans Private Patrol Service*, 57 F.Supp. 143, 148 (E.D.La.1944); *Walling v. Lunn, 8 C.C.H. Lab.Cas.* ¶ 62,185 (S.D.Miss.1944); *Walling v. Wattam, 8 C.C.H. Lab.Cas.* ¶ 62,023 (W.D.Tenn.1943).

11. Findings of Fact 13(c) (App. pp. 35–36) and Stipulation of Feb. 1, 1974 (App. pp. 24–27).

12. See 29 C.F.R. § 779.321(b).

13. 29 C.F.R. § 779.317.

must look to that body for the ultimate clarification that is needed in this area.

## II.

### RECOGNITION AS RETAIL

As pointed out earlier, Section 13(a)(2) also requires that 75% of a business's sales be "recognized as retail sales or services in the particular industry." 29 U.S.C. § 213(a)(2). On this question, the District Judge found that "plaintiffs have not met the burden of proof on industry recognition." [14] In light of our holding with respect to Homemakers' "retail concept," we also must undertake a review of this issue.[15] On appeal, appellants argue that the District Court imposed a novel and invalid burden of proof upon them by requiring that before industry recognition can be proved, evidence from persons in all parts of the industry must be introduced. Industry recognition was one topic of debate on the floor of Congress. At one point the following colloquy occurred between Senators Holland and Douglas:

> "I should also like to ask the Senator from Florida the meaning of the phrase: 'And is recognized as retail sales or service in the particular industry.' Who is to define that?
>
> MR. HOLLAND. Who but the Administrator? If the administrative or interpretative ruling is not regarded as sound by the individual person concerned, then he can appeal; and then the matter will be ruled on by the courts.
>
> MR. DOUGLAS. I understand that the interpretation which would be made would be that given to "retail sale" by a trade association.
>
> MR. HOLLAND. That is one criterion, of course; but I do not believe the Senator from Illinois, and certainly not the Senator from Florida, would wish to delegate full authority in the matter to a

trade association or any other interested group." 95 Cong.Rec. 12501 (1949).

Later the same day, Senator Aiken questioned Senator Holland as follows:

> MR. AIKEN. . . . The language is 'and is recognized as retail sales or services in the particular industry.' Who does the recognizing?
>
> MR. HOLLAND. The Administrator, the courts, the merchant, his employees, the enforcement officer, and everyone else. Here is the standard set up, and for the determination of the standard everybody who is concerned has a right to discover what his standard in the particular industry is. An employee who has rights under the bill, if he sees something happening in the name of retail business which he knows is not retail business, has a perfect right to assert himself, and when he asserts himself, he shall not have his complaint fall on deaf ears. If he can show that a practice which is being sought to be shown as a retail practice is not so at all, of course it will not be so held.
>
> MR. AIKEN. Then we have the Senator's assurance that this wording is clearly not intended to permit any industry to determine for itself what are generally recognized as retail sales?
>
> MR. HOLLAND. No. We discussed that matter earlier in the afternoon. There could be various criteria which could be applied, one of which of course would be the conclusion of the trade association in the particular industry. But that is only one criterion. Others would apply. The well-settled habits of business must be applied. They will not necessarily be the same in all trades or businesses." 95 Cong.Rec. 12510 (1949).

Senator Holland's interpretation of this wording has been followed in the Administrator's regulations. 29 C.F.R. § 779.324 states:

---

14. Conclusion of Law 8 (App. p. 37).

15. Since the District Court concluded that appellants lacked a "retail concept," the "industry recognition" issue need not have been reached by the Court below.

The express terms of the statutory provision requires the "recognition" to be "in" the industry and not "by" the industry. Thus, the basis for the determination as to what is recognized as retail "in the particular industry" is wider and greater than the views of an employer in a trade or business, or an association of such employers. It is clear from the legislative history and judicial pronouncements that it was not the intent of this provision to delegate to employers in any particular industry the power to exempt themselves from the requirements of the Act. It was emphasized in the debates in Congress that while the views of an industry are significant and material in determining what is recognized as a retail sale in a particular industry, the determination is not dependent on those views alone. (See 95 Cong.Rec. pp. 12501, 12502, and 12510; *Wirtz v. Steepleton General Tire Co.*, 333 [383] U.S. 190 [86 S.Ct. 737, 15 L.Ed.2d 694]; *Mitchell v. City Ice Co.*, 273 F.2d 560 (CA–5); *Durkin v. Casa Baldrich, Inc.*, 111 F.Supp. 71 (DCPR) affirmed 214 F.2d 703 (CA–1); see also *Aetna Finance Co. v. Mitchell*, 247 F.2d 190 (CA–1).) Such a determination must take into consideration the well-settled habits of business, traditional understanding and common knowledge. These involve the understanding and knowledge of the purchaser as well as the seller, the wholesaler as well as the retailer, the employee as well as the employer, and private and governmental research and statistical organizations. The understanding of all these and others who have knowledge of recognized classifications in an industry, would all be relevant in the determination of the question.

Here the primary evidence of industry recognition consisted of a survey conducted by Trend Research Inc.[16] This survey tabulated the results of a telephone canvassing of 192 temporary help contractors located throughout the United States, and purports to show that over two-thirds of the industry views itself as engaged in retail operations.[17]

In his evaluation of this evidence, the District Judge cited the previously quoted authorities, and concluded that:

"serious questions are raised in the Court's mind concerning the methodology and content of the survey conducted by Trend Research, Inc. However, pretermitting this question, the survey as conducted did not attempt to meet the criteria set by Senator Holland and the Secretary of Labor in that it does not reflect any attempt to contact all persons a part of the industry, i. e., the merchant's employees, his customers and everyone else a part of the industry." Findings of Fact 10 (App. page 35).

■ Disputing this finding, appellants argue that the District Court is justified in relying upon the evidence of the industry's own views as embodied in the Trend Research survey, and that evidence adduced from any additional sources is relevant, but not required by the Act. We have reviewed these authorities, along with the District Court's holding, and find that no new burden has been raised here. Indeed, the District Court appears to us to have followed just the standard now urged upon us by appellants. As we read the disputed findings, the District Court has stated that a number of criteria useful in determining the extent of industry recognition had not been met, or even addressed by Homemakers, and that it had therefore not tipped the evidentiary scales in its favor. Although this finding may not include the clearest summary of the law with respect to the burden of proof, we cannot say it is so vague or so inaccurate as to be reversibly in error. In viewing the District Court disposition on the merits of a similar issue, the First Circuit concluded in *Telephone Answering Service v. Goldberg*, 290 F.2d 529, 534 (1st Cir. 1961) that:

"[T]he district court found that the preponderance of the evidence did not sup-

16. Appendix p. 340.

17. Appendix p. 353.

port the defendant's contention. The court had the witnesses before it, observed their demeanor and evaluated their testimony. We cannot say that the conclusion to which it came was clearly erroneous."

We agree, and therefore find as did the District Court, that since all the requirements of Section 13(a)(2) have not been met, appellants Homemakers Home and Health Care, Inc. are not exempt from the minimum wage provisions of the Fair Labor Standards Act.

Accordingly, the District Court judgment is affirmed.

No costs are taxed. Each party will bear its own costs on this appeal.

McCREE, Circuit Judge (concurring).

I concur in the affirmance of the judgment of the district court and write separately only to make explicit what appears to be implicit in Judge Miles' opinion. I regard the issue of "retail concept" as a question of law and the issue of "recognition as retail" as a question of fact to be set aside only if clearly erroneous. *See Brennan v. Keyser,* 507 F.2d 472 (9th Cir. 1974), *cert. denied, Keyser v. Dunlap,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975).

PECK, Circuit Judge (concurring).

I concur in the affirmance of the judgment of the district court and with the separate concurring opinion filed by Judge McCree.